**GERMAINE MUSIC, et al, Plaintiff,**

v.

**UNIVERSAL SONGS OF POLYGRAM, a/k/a Polygram Records, UMG, and BMI (Broadcast Music, Inc.), Defendants.**

**No. CV–S–03–0047 PMP(LRL).**

United States District Court,
D. Nevada.

July 25, 2003.

General Crook, North Las Vegas, NV, pro se.

Germaine Music, North Las Vegas, NV, pro se.

Vincent C. Ferenbach, Lionel, Sawyer & Collins, Kenneth R. Myers, Lionel, Sawyer & Collins, Las Vegas, NV, Jeffrey D. Goldman, Mitchell, Silberberg & Knupp, Nicole L. Harris, Mitchell, Silberberg & Knupp, Los Angeles, CA, Mark A. Hutchison, Hutchison & Steffen, Luke K. Rath, Hutchison & Steffen, Kevin A. Sprenz, Hutchison & Steffen, Las Vegas, NV, Jeffrey D. Goldman, Mitchell, Silberberg & Knupp, Nicole L. Harris, Mitchell, Silberberg & Knupp, Los Angeles, CA, Mark A. Hutchison, Hutchison & Steffen, Luke K. Rath, Hutchison & Steffen, Kevin A. Sprenz, Hutchison & Steffen, Las Vegas, NV, for Defendants.

## ORDER

PRO, Chief Judge.

Presently before this Court are several motions. First, Defendant Broadcast Music, Inc. ("BMI") filed a Motion to Dismiss Plaintiff's Claims Against Broadcast Music, Inc. (pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6)), and Alternative Motion to Stay Action and Compel Arbitration (pursuant to 9 U.S.C. § 3) (Doc. # 15) on May 1, 2003. BMI filed a Reply Memorandum of Points and Authorities in Further Support of BMI's Motion to Dismiss (Doc. # 22) on May 13, 2003. Plaintiff General Crook ("Crook") filed a Response

to BMI's Reply Memorandum of Points and Authorities (Doc. # 23) on May 13, 2003. Crook filed an Opposition to Motion to Dismiss (Doc. # 25) on May 15, 2003.[1] BMI filed a Reply in Support of Defendant BMI's Motion to Dismiss or Alternatively to Compel Arbitration (Doc. # 31) on May 27, 2003. Crook filed another Opposition to Motion to Dismiss [hereinafter referred to as "Second Opposition"[2]] (Doc. # 32) on May 23, 2003.[3]

Second, Crook filed a Motion to Strike UMG [Recordings, Inc.]'s Answer to Amended Complaint (Doc. # 20) on May 8, 2003. UMG Recordings, Inc. ("UMG") filed an Opposition to Plaintiff's Motion to Strike Defendant UMG Recordings, Inc.'s (erroneously sued as Universal Songs of Polygram, A/K/A Polygram Records) Answer to Amended Complaint. (Doc. # 27) on May 20, 2003. Crook filed an Opposition to Defendants [sic] Response Regarding Plaintiffs [sic] Motion to Strike UMG [sic] Answer to Amended Complaint (Doc. # 30) on May 22, 2003.

█ Crook also filed a Motion for Summary Judgment (Doc. # 24) on May 13, 2003. UMG filed a Motion for Enlargement of Time to Oppose Plaintiff's Motion for Summary Judgment (Doc. # 26) on May 19, 2003. Crook filed an Opposition to Motion for Enlargement of Time to Oppose Plaintiffs [sic] Motion for Summary Judgment (Doc. # 29), as well as an Amended Motion for Summary Judgment (Doc. # 28) on May 21, 2003.[4] BMI filed an Opposition to Plaintiff's Motion for Summary Judgment; Opposition to Plaintiff's Amended Motion for Summary Judgment; and Motion to Strike Plaintiff's Amended Motion for Summary Judgment (Docs. # 33 & 34) on May 28, 2003. As to the Motion to Strike, Crook filed no Opposition, and BMI filed no Reply. Crook filed a Reply to Defendant BMI's Opposition to Plaintiffs [sic] Amended Motion for

1. BMI asks this Court to grant its Motion to Dismiss because Crook failed to comply with Rule 7–2 of the Local Rules of Practice of the United States District Court for the District of Nevada. Rule 7–2(b) states, "[u]nless otherwise ordered by the court, points and authorities in response shall be filed and served by an opposing party fifteen (15) days after service of the motion." Local Rule 7–2(b). BMI states that it was never served with the Opposition. (Reply in Support of Mot. to Dismiss at 4.) Apparently, Crook served the Opposition on Hutchison & Steffen, Ltd., the law firm representing UMG. (Id.; see also Opp'n to Mot. to Dismiss, Proof of Service.) Because of the procedural irregularities of this case (explained in footnote 3), this Court will consider Crook's Opposition to the Motion to Dismiss. However, Crook is reminded that pro se litigants are bound by the same rules of procedure as other litigants. See Ghazali v. Moran, 46 F.3d 52, 54 (9th Cir.1995) (citing King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987)). In the future, Crook will be expected to comply with procedural requirements.

2. Crook's Second Opposition is virtually identical to the first Opposition that was filed. It does, however, appear that the Second Opposition was served on Lionel Sawyer & Collins, the law firm representing BMI.

3. The procedural irregularities of these filings seem to have begun when this Court struck Crook's document entitled "Response to Defendant BMI's Answer (Crook's Reply to BMI's Motion to Dismiss)." BMI claims that it was unaware of the Court's Order until May 15, 2003 and filed a Reply in Support of BMI's Motion to Dismiss or in the Alternative to Compel Arbitration (Doc. # 22) on May 13, 2003. Subsequently, Crook filed an Opposition to Motion to Dismiss. (Doc. # 25.)

4. Crook did not ask this Court for leave to file an Amended Motion for Summary Judgment. However, because Crook's Amended Motion for Summary Judgment is not materially different from his original Motion for Summary Judgment, this Court will consider Crook's Amended Motion.

Summary Judgment (Doc. # 35) on May 29, 2003. UMG filed a Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Summary Judgment (Doc. # 36) on June 3, 2003.[5] UMG also filed a request for summary judgment (Doc. # 36) on June 3, 2003.[6] Crook filed a Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment and Opposition to Defendant's Request for Summary Judgment (Doc. # 39) on June 13, 2003. Crook filed Supplemental Pleadings for Defendant BMI of Previous Filings in Opposition to Defendant UMG's Motion for Enlargement of Time and Motion to Strike UMG's Answer to Amended Complaint (Doc. # 41) on June 23, 2003.

BMI also filed a Motion for Sanctions (Doc. # 37) on June 9, 2003. Crook filed no Opposition, and BMI filed no Reply.[7]

Finally, Crook filed a Motion for Leave to File an Amended Pleading in Opposition to BMI's Motion to Dismiss or Alternatively to Compel Arbitration (Doc. # 40) on June 16, 2003. BMI filed no Opposition, and Crook filed no Reply.[8]

## I. BACKGROUND

Crook alleges that he owns and does business under the name "Germaine Music." (Crook's Resp. to BMI's Reply Mem. of P. & A. at 3; Am. Compl. at 2.) Germaine Music allegedly owns copyrights to twenty-seven songs. (Am. Compl. at 3.) Crook contends that the Chi–Lites performed and recorded Crook's copyrighted song, "Message to the World," on their album, "Happy Being Lonely." (Am. Compl. at 8.) The Chi–Lites allegedly had a recording agreement with UMG's prede-

---

**5.** UMG's Opposition to Plaintiff's Motion for Summary Judgment was filed six days late. However, this Court is granting UMG's Motion for Enlargement of Time to Oppose Plaintiff's Motion for Summary Judgment that is presently before the Court.

**6.** UMG's request for summary judgment was filed as part of UMG's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Summary Judgment and does not have a separate document number. In fact, UMG merely states, "UMG, not Plaintiff, is entitled to summary judgment on all of Plaintiff's claims." (Def. UMG's Mem. of Ps. & As. in Opp'n to P.'s Mot. for Summ. J. at 5.) This Court treats the request separately to clarify the issues and because Crook referred to UMG's argument as a separate request "for summary Judgment" in the responsive document he filed with this Court. (P.'s Reply to Def.'s Opp'n to P's Mot for Summ. J. & Opp'n to Def.'s Request for Summ. J. at 1.) To the extent that UMG's assertion is not a formal motion for summary judgment, this Court still has the authority to *sua sponte* grant summary judgment to UMG if it is appropriate. *Scoggins v. Boeing Co., Inc.*, 742 F.2d 1225, 1227 n. 1 (9th Cir.1984) (citing *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir.1982)).

**7.** BMI argues that this Court should strike two documents as a sanction for failing to comply with Local Rule 7–2 of the Local Rules of Practice of the United States District Court for the District of Nevada. BMI asks this Court to strike Crook's Second Opposition and a document entitled "Plaintiff's Opposition to Reply of Defendant BMI's Motion to Dismiss or Alternatively to Compel Arbitration." ("Plaintiff's Opposition to Reply.") Because of this Court's determination with respect to BMI's Motion to Dismiss, BMI's request to strike Crook's Second Opposition is moot. Additionally, BMI's arguments with respect to Plaintiff's Opposition to Reply are also moot, but for a different reason: Crook has not filed a document with such a title in this Court. BMI's Motion for Sanctions will be denied.

**8.** Crook's Motion for Leave to File an Amended Pleading is virtually identical to his Second Opposition. The granting or dismissal of such a Motion is discretionary with the Court. Allowing Crook to file this amended pleading would not cure any of the procedural defects in this case nor would it affect any decision of this Court. Therefore, Crook's Motion will be denied.

cessor, which recorded the album.[9] (UMG's P. & A. in Opp'n to Mot. for Summ. J. at 3.) Crook allegedly has a "Mechanical Licensing Agreement"[10] ("UMG Agreement") with UMG. (Am. Compl. at 5.)

BMI, a nonprofit corporation with its principal place of business in New York City, "undertakes the responsibility to collect performance royalties on the writers' and publishers' behalf and to distribute the monies so collected" after deducting a portion for operating expenses.[11] (Mot. to Dismiss at 3.) Crook allegedly signed a standard contract with BMI ("BMI Contract") that gave BMI the right to license the public performance rights of the musical compositions at issue and to collect royalties on Crook's behalf. (*Id.* at 4.) The BMI Contract contained an arbitration clause. (*Id.*)

Crook alleges that BMI and UMG infringed upon his copyrights by "annexing" twenty-seven titles without paying him. (Am. Compl. at 3.) Crook further alleges that BMI paid royalties that BMI owed Crook to UMG, which was acting under the name "Donovan Germaine Music." (Am. Compl. at 3.) In his Amended Complaint, Crook includes causes of action against BMI and UMG for copyright infringement, breach of contract, and theft by deception.

## II. BMI'S MOTION TO DISMISS

### A. LEGAL STANDARD [12]

■■■ In considering "a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.,* 135 F.3d 658, 661 (9th Cir.1998) (citation omitted). However, the court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in plaintiff's complaint. *See Clegg v. Cult Awareness Network,* 18 F.3d 752, 754–55 (9th Cir.1994). There is a strong presumption against dismissing an action for failure to state a claim. *See Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir.1997) (citation omitted). " 'The issue is not whether a plaintiff will ultimately prevail but whether [he] is entitled to offer evidence in support of the claims.' " *Id.* (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Harlow v. Fitzgerald,* 457 U.S. 800, 807, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Consequently, the court should not grant a motion to dismiss "for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

---

9. The Chi–Lites' recording agreement was with a record company called "Phonogram, Inc." ("Phonogram"). (UMG's Mem. of P. & A. in Opp'n to Pl.'s Mot. for Summ. J. at 3.) Phonogram *is* the predecessor of PolyGram Records. (*Id.*) PolyGram Records is now known as "UMG." (*Id.*)

10. "Mechanical royalties are royalties based on sales of sound recordings (such as vinyl records or compact discs) embodying a musical composition." (UMG's Mem. of P. & A. in Opp'n to Mot. for Summ. J. at 2.)

11. BMI claims to have the right to license the public performance rights in more than 4.5 million copyrighted musical compositions. (Mot. to Dismiss at 3.)

12. BMI has moved to dismiss the present action on two independent grounds—Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). This Court finds that 12(b)(6) provides the appropriate standard for dismissal in this case. As a result, this Court will not address BMI's arguments pertaining to dismissal under 12(b)(1).

*Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Hicks v. Small,* 69 F.3d 967, 969 (9th Cir.1995).

■ The liberal rules of notice pleading set forth in the Federal Rules of Civil Procedure do not require a plaintiff to set out in detail the facts supporting his claim. *See* Fed.R.Civ.P. 8; *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). All the Rules require is " 'a short and plain statement' " that adequately " 'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " *Swierkiewicz,* 534 U.S. at 512, 122 S.Ct. 992 (quoting *Conley,* 355 U.S. at 47, 78 S.Ct. 99). Therefore, a plaintiff merely must plead sufficiently to "establish a basis for judgment against the defendant." *Yamaguchi v. United States Dep't of the Air Force,* 109 F.3d 1475, 1481 (9th Cir. 1997) (citations omitted). Further, a claim is sufficient if it shows that the plaintiff is entitled to any relief which the court can grant, even if the complaint asserts the wrong legal theory or asks for improper relief. *See United States v. Howell,* 318 F.2d 162, 166 (9th Cir.1963).

## B. DISCUSSION

BMI seeks to dismiss Crook's claims against it pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, to stay the action and compel arbitration pursuant to 9 U.S.C. § 3. BMI claims that Crook's allegations comprise a standard breach of contract action. (Mot. to Dismiss at 3.)

BMI further claims that the arbitration clause in the BMI Contract covers this breach of contract action. According to the BMI Contract:

> All disputes of any kind, nature or description whatsoever arising in connection with the terms and conditions of this agreement, or arising out of the performance thereof, or based upon an alleged breach thereof, shall be submitted to arbitration in the City, County and State of New York under the then prevailing rules of the American Arbitration Association by an arbitrator or arbitrators ....

(*Id.* at 4.) BMI states that mandatory arbitration is proper because Crook's "claims against BMI are plainly 'arising out of, or relating to' the Crook Agreement, which deals with the licensing of public performance rights and the collection of performance royalties." (*Id.* at 5 (quoting the BMI Contract).)

■ Crook maintains that this action is not an ordinary breach of contract action. (Sec. Opp'n at 2.) Crook explicitly lists three "counts" in his Complaint: copyright infringement, breach of contract, and theft by deception. (Am.Compl.) However, the Ninth Circuit construes pleadings liberally in favor of pro se litigants. *Ghazali v. Moran,* 46 F.3d 52, 54 (9th Cir.1995). Construing Crook's Amended Complaint liberally, he also appears to assert causes of action related to: violations of the Fifth and Fourteenth Amendments of the Constitution, civil conspiracy,[13] and 42 U.S.C. § 1983. (*See generally* Am. Compl.; *see also* Sec. Opp'n.)

---

**13.** Crook actually alleges a violation of 18 U.S.C. § 241. However, 18 U.S.C. § 241 is a criminal statute that makes it a crime to conspire to deprive a person of "any right or privilege secured to him by the constitution or laws of the United States ...." 18 U.S.C. § 241 (2003). Construing Crook's Complaint liberally, this Court will analyze this claim as civil conspiracy.

## 1. THE FEDERAL ARBITRATION ACT

The Federal Arbitration Act ("FAA") states, "A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA uses the term "commerce" to refer to interstate commerce. 9 U.S.C. § 1.

■ Congress enacted the FAA "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). "By its terms, the Act 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic Sys.,* 207 F.3d 1126, 1130 (9th Cir.2000) (emphasis in original) (quoting *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)). This Court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Id.* at 1130.

■ As a threshold matter, the FAA only applies to written contracts involving interstate commerce. 9 U.S.C. § 2. Here, the BMI Contract is written. Further, the BMI Contract involves interstate commerce. The BMI Contract gives BMI the right to license the musical compositions at issue throughout the United States and the world. (BMI's Mot. to Dismiss, Ex. A, §§ 3(A), 5(A).) Additionally, Crook is currently a Nevada domiciliary and BMI is incorporated in New York. (Am. Compl. at 1; BMI's Mot. to Dismiss at 3.) Necessarily, transactions between these parties involve interstate commerce. As a result, the FAA applies, and this Court must determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron,* 207 F.3d at 1130.

### a. THE VALIDITY OF THE ARBITRATION AGREEMENT

Initially, this Court must determine if a valid arbitration agreement exists between BMI and Crook. *Chiron,* 207 F.3d at 1130. Crook claims that "[i]t is unjust to compel Plaintiff to abide by a contract that is based on deception and malicious intent to defraud." (Sec. Opp'n at 3.) Crook "denies that this was a good faith agreement since BMI has never lived up to any obligations afforded by said contract." (*Id.*)

Construing Crook's Complaint liberally, *Ghazali,* 46 F.3d at 54, Crook seems to assert two distinct theories: (1) the BMI Contract was based on fraud and is therefore invalid and (2) he should not have to abide by an arbitration clause in the BMI Contract because the contract was breached.

■ Crook seems to argue that the BMI Contract is invalid because of fraud. "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2" of

the FAA. *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 937 (9th Cir.2001). However, the Supreme Court has stated that in order for a federal court to adjudicate the issue of fraud in a contract with an arbitration agreement, the alleged fraud must be in the arbitration clause itself. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). Crook has not alleged that he was fraudulently induced to agree to the arbitration clause or that the arbitration clause contains fraudulent statements. Therefore, this Court cannot conclude that the arbitration clause is invalid because of fraud.

■ Second, Crook seemingly believes that he should not be bound to the arbitration agreement in the BMI Contract because the contract was allegedly breached. However, "seldom if ever is a party discharged from his duty to arbitrate by the fact that the other party has committed a breach." 15 Arthur Linton Corbin, *Corbin on Contracts*, § 1443, at 383 (1993). "It is possible, however, that a breach may be of a kind that destroys the end and aim of the arbitration provision itself." *Id.* The present case is not one in which the alleged breach "destroys the end and aim of the arbitration provision" because the arbitration clause explicitly states that it applies in the event of a breach of contract. (BMI's Mot. to Dismiss, Ex. A, BMI Contract ¶ 16.) Thus, whether or not BMI breached the BMI Contract, the arbitration clause is still binding. Even viewing the evidence in the light most favorable to Crook, the non-moving party, Crook has not met his burden with respect to showing the arbitration clause is invalid. *See County of Tuolumne*, 236 F.3d at 1154.

### b. THE SCOPE OF THE ARBITRATION CLAUSE

This Court also must determine the scope of the arbitration clause. *Chiron*, 207 F.3d at 1130. The arbitration clause at issue states, "[a]ll disputes of any kind, nature or description arising in connection with the terms and conditions of this agreement, or arising out of performance thereof, or based upon an alleged breach thereof, shall be submitted to arbitration ...." (BMI's Mot. to Dismiss, Ex. A, BMI Contract ¶ 16.) Therefore, this Court must determine whether Crook's claims arise "in connection with" or "out of the performance of" the agreement. (*Id.*) *See also Chiron Corp.*, 207 F.3d at 1130.

### i. COPYRIGHT INFRINGEMENT

■ Crook alleges that BMI infringed upon his copyrights by "annexing Germaine Music's entire catalog which consists of twenty-seven titles ... to reflect non-ownership by Germaine Music with the intent to funnel monies due Germaine Music to Donovan Germaine Music/UMG, Inc." (Am. Compl. at 3.) Crook appears to assert that this action violated 17 U.S.C. § 1202 and 17 U.S.C. § 501. (Am. Compl. at 3; Pl.'s Opp'n to Mot. to Dismiss at 2.)

Section 1202(a) of the Copyright Act states, "[n]o person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement—(1) provide copyright management information[14] that is false ...." 17 U.S.C. § 1202(a)(1). Section 1202(b) of the Copyright Act states, "[n]o person shall, without the authority of the copyright owner or the law—(1) inten-

---

**14.** 17 U.S.C. § 1202(c) defines "copyright management information" as:

 ... any of the following information conveyed in connection with copies or phono-records of a work or performances or displays of a work, including in digital form ....:

tionally remove or alter any copyright management information . . . ." 17 U.S.C. § 1202(b)(1).

BMI claims that the BMI Contract grants BMI the right to license the public performance rights of the musical compositions at issue. (Mot. to Dismiss at 3.) If BMI does have this right, BMI would be required, in some circumstances, to provide "copyright management information" to others. 17 U.S.C. §§ 1202(a)(1) and (b)(1). Therefore, this alleged violation of 17 U.S.C. § 1202 arises "out of the performance" of the BMI Contract.

17 U.S.C. § 501 states, "[a]nyone who violates any of the exclusive rights of the copyright owner . . . or of the author . . . is an infringer of the copyright or right of the author, as the case may be." Crook does not clearly state in his Complaint what rights BMI allegedly violated. However, BMI's dealings with the musical compositions at issue resulted from BMI's role in licensing the public performance rights of the compositions. Therefore, any violations of Crook's rights as a copyright own-

er arose "out of the performance" of the BMI Contract.

### ii. BREACH OF CONTRACT

 Crook's breach of contract claim is within the scope of the arbitration clause. The clause explicitly covers allegations of breach of contract. (BMI's Mot. to Dismiss, Ex. A, BMI Contract ¶ 16.) According to the arbitration clause in the BMI Contract, "[a]ll disputes of any kind, nature or description whatsoever arising in connection with the terms and conditions of this agreement, . . . or based upon an alleged breach thereof, shall be submitted to arbitration . . . ." (BMI's Mot. to Dismiss, Ex. A, BMI Contract ¶ 16.)

### iii. CIVIL CONSPIRACY AND THEFT BY DECEPTION

Crook also includes causes of action for civil conspiracy and theft by deception.[15] Crook does not allege any new factual support for either of these claims; he relies on the same allegations made else-

(1) The title and other information identifying the work, including the information set forth on a notice of copyright.
(2) The name of, and other identifying information about, the author of a work.
(3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.
(4) With the exception of public performances of works by radio and television broadcast stations, the name of, and other identifying information about, a performer whose performance is fixed in a work other than an audiovisual work.
(5) With the exception of public performances of works by radio and television broadcast stations, in the case of an audiovisual work, the name of, and other identifying information about, a writer, performer, or director who is credited in the audiovisual work.

(6) Terms and conditions for use of the work.
(7) Identifying numbers or symbols referring to such information or links to such information.
(8) Such other information as the Register of Copyrights may prescribe by regulation, except that the Register of Copyrights may not require the provision of any information concerning the user of a copyrighted work.
17 U.S.C. § 1202(c).

**15.** Crook cites no authority for the proposition that "theft by deception" is an actionable tort claim. Many states do have criminal statutes prohibiting "theft by deception." *See, e.g.,* Alaska Stat. § 23.30.250 (2003), N.J. Stat. § 2C:20–4 (2003), Or.Rev.Stat. § 164.085 (2001). However, a private party cannot sue for damages pursuant to a criminal statute.

where in his Amended Complaint. Crook essentially alleges that BMI breached the BMI Contract by not paying him the royalties that were due to him and that BMI provided false copyright management information. (Am. Compl. at 3.) As explained above, these allegations do arise "in connection with" or "out of the performance of" the BMI Contract.

### iv. CONSTITUTIONAL VIOLATIONS

Crook next claims that BMI's conduct violated his constitutional rights under the Fifth and Fourteenth Amendments to the Constitution. (Crook's Resp. to BMI's Reply Mem. of P. & A. at 3; Am. Compl. at 1.) Specifically, Crook asserts that BMI violated his rights under the privileges and immunities clause, the due process clause and the equal protection clause of the Fourteenth Amendment as well as the due process clause and takings clause of the Fifth Amendment.

Crook asserts that the alleged copyright infringement resulted in violations of his constitutional rights. (Am. Compl. at 4.) However, the alleged copyright infringement "ar[ose] out of the performance" of the BMI Contract. Therefore, the alleged constitutional violations also "ar[ose] out of the performance" of the BMI Contract, and the mandatory arbitration clause precludes this Court from analyzing the viability of Crook's constitutional claims.

### v. 42 U.S.C. § 1983

Crook does not allege any facts related to his § 1983 claim that differ from the facts alleged in relation to his other claims. As a result, Crook's claim under § 1983 arises "in connection with" the BMI Contract. The mandatory arbitration clause

precludes this Court from analyzing the merits of Crook's § 1983 claim.

### 2. THE PROPRIETY OF DISMISSAL

■ The FAA states, "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending ... shall ... stay the trial of the action ...." 9 U.S.C. § 3. Despite the mandatory language, the Ninth Circuit has interpreted this provision to allow dismissal of the action in certain circumstances. In *Sparling v. Hoffman Construction Co.*, the court concluded that dismissal was proper because the plaintiff had agreed to submit all of his claims to arbitration. 864 F.2d 635, 638 (9th Cir.1988). The case at bar is similar because Crook signed a valid arbitration agreement and all of his claims fall under the scope of that agreement. Therefore, "it appears beyond doubt that [Crook] can prove no set of facts in support of his claim" that this Court is the proper forum for the resolution of his claims. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). BMI's Motion to Dismiss will be granted.

### III. CROOK'S MOTION TO STRIKE

#### A. LEGAL STANDARD

■ A court may grant a motion to strike pursuant to Federal Rule of Civil Procedure 12(f) if the contested language constitutes an "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Pro. 12(f). "Redundant matter" is that which "consists of allegations that constitute a needless repetition of other averments."

5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382, at 704 (2d ed.1990). Matter which is "immaterial" is "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds,* 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) (citing 5A Charles Alan Wright & Arthur R. Miller § 1382, at 706–07) (internal citations omitted). "'Impertinent' matter consists of statements that do not pertain, and are not necessary to the issues in question." *Id.* (citing 5A Charles Alan Wright & Arthur R. Miller § 1382, at 711). "Scandalous" matter "improperly casts a derogatory light on someone, most typically on a party to the action." 5A Charles Alan Wright & Arthur R. Miller § 1382, at 712.

■■■ Federal courts generally disfavor motions to strike. *Colaprico v. Sun Microsystems, Inc.,* 758 F.Supp. 1335, 1339 (N.D.Cal.1991) ("[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.") (citing sources); *United States v. 729.773 Acres of Land, More or Less, Situate in City and County of Honolulu,* 531 F.Supp. 967, 971 (D.Haw.1982) ("A motion to strike is a severe measure and it is generally viewed with disfavor."); *Bureerong v. Uvawas,* 922 F.Supp. 1450, 1478 (C.D.Cal.1996) ("[M]otions are generally disfavored because they are often used as delaying tactics, and because of the limited importance of pleadings in federal practice.") (cites and quotes omitted).

## B. DISCUSSION

■■■ Crook argues that this Court should strike UMG's Answer to the Amended Complaint pursuant to Local Rule 7–2 because UMG failed to file an opposition to Crook's Motion to Amend his Complaint. (Mot. to Strike at 1.) UMG claims that its decision not to oppose the Motion constituted a stipulation to the filing of the Amended Complaint. (Opp'n to Mot. to Strike at 1.) UMG further asserts that it did not waive its right to file a responsive pleading. (*Id.*)

Rule 7–2(d) of the Local Rules of Practice of the United States District Court for the District of Nevada states, "[t]he failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of a motion." This rule is inapplicable to the issue at bar. Crook has not moved to strike the Opposition to his Motion; he has moved to strike UMG's Answer to the Amended Complaint.

Motions to strike are governed by Rule 12(f) of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 12(f). Under this rule, a court may grant the motion if the contested language constitutes an "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Pro. 12(f). Crook has not alleged, and this Court does not find, that UMG's Answer to the Amended Complaint falls within this standard. Furthermore, UMG admits that it had no objection to Crook's filing an Amended Complaint. (Opp'n to Mot. to Strike at 1.) Crook's Motion to Strike will be denied.

## IV. UMG'S MOTION FOR TIME

■■■ UMG asks this Court for an additional fifteen days to oppose Crook's Motion for Summary Judgment. (Mot. for Enlargement of Time at 3.) UMG claims that it needs more time due to "Plaintiff's

failure to comply with Federal Rules of Civil Procedure, the Local Rules of the District Court for The District of Nevada, and the extensive documents required to adequately oppose Plaintiff's Motion." [16] (*Id.* at 1.) Crook asks this Court to deny UMG's Motion for Enlargement of Time because he alleges that UMG has had plenty of time to prepare for this case and is attempting to stall Crook's Motion for Summary Judgment.

Rule 6(b) of the Federal Rules of Civil Procedure states:

> When ... an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed ....

Fed.R.Civ.P. 6(b). UMG filed its Motion for Enlargement of Time only six days after Crook filed his Motion for Summary Judgment. Six days is well within the fifteen days a party has to oppose a motion. *See* Local Rule 7–2(b). In the interest of justice, and in light of the fact that UMG's Opposition has now been filed in this Court, this Court will grant UMG's Motion for Enlargement of Time and will consider UMG's Opposition to Crook's Motion for Summary Judgment.

## V. CROOK'S AND UMG'S CROSS–MOTIONS FOR SUMMARY JUDGMENT

### A. LEGAL STANDARD

A motion for summary judgment is a procedure which terminates, without a trial, actions in which "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A summary judgment motion may be made in reliance on "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *Id.*

The movant is entitled to summary judgment if the non-moving party, who bears the burden of persuasion, fails to designate " 'specific facts showing that there is a genuine issue for trial.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(e)). Thus, in order to preclude a grant of summary judgment, the non-moving party must set forth " 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). The substantive law defines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All justifiable inferences must be viewed in the light most favorable to the non-moving party. *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir.2001) (citing *Zenith Radio Corp.*, 475 U.S. at 587, 106 S.Ct. 1348).

Although the non-moving party has the burden of persuasion, the party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Metro Indus., Inc. v. Sammi Corp.*, 82 F.3d 839, 847 (9th Cir.1996). That burden is met by showing an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548. The burden

---

**16.** UMG filed its Opposition before this Court ruled on its Motion for Enlargement of Time.

then shifts to the non-moving party to set forth specific facts demonstrating that there is a genuine issue for trial. *Liberty Lobby, Inc.*, 477 U.S. at 250, 106 S.Ct. 2505. In meeting this burden, "the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir.2001) (internal quotation and citation omitted).

## B. DISCUSSION

Crook asserts that summary judgment is proper because he has proven his case "by a preponderance of evidence and as a matter of law." (Pl.'s Am. Mot. for Summ. J. at 1.) Crook further contends that UMG has not presented any evidence to justify its acts.[17] (*Id.* at 2)

UMG asks this Court to deny Crook's Motion for Summary Judgment and asks this Court to grant summary judgment against Crook. UMG claims that Crook has failed to prove that there is no issue of material fact. (UMG's Mem. of P. & A. in Opp'n to Mot. for Summ. J. at 4.) Furthermore, UMG asserts that all of Crook's claims fail as a matter of law. (*Id.*)

### 1. CROOK'S MOTION FOR SUMMARY JUDGMENT

■ Crook has not met his initial burden of showing the absence of a genuine issue of material fact. *See Metro Indus., Inc. v. Sammi Corp.*, 82 F.3d 839, 847 (9th Cir.1996). Crook does not explain why he might be entitled to summary judgment or set forth evidence showing that no factual dispute exists. Crook has attached exhibits to his motion for Summary Judgment

but does not explain how they prove that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(e). Crook merely asserts his conclusions that he has proven his case as a matter of law and that UMG does not have evidence to win at trial. Such allegations fail to meet the moving burden on a Motion for Summary Judgment. *See Metro Indus., Inc. v. Sammi Corp.*, 82 F.3d 839, 847 (9th Cir. 1996); Fed.R.Civ.P. 56(c).

### 2. UMG's MOTION FOR SUMMARY JUDGMENT

UMG claims that summary judgment against Crook is proper because Crook's claim of civil conspiracy is barred by the statute of limitations and the equitable doctrine of laches. (UMG's Mem. of P. & A. in Opp'n to Mot. for Summ. J. at 6, 7.) UMG also asserts that Crook's claims for breach of contract and theft by deception are barred by statutes of limitations. (*Id.* at 10, 12.)

#### a. COPYRIGHT INFRINGEMENT

##### i. STATUTE OF LIMITATIONS

■ UMG contends that Crook's copyright infringement claim is based on Crook's claim that UMG has failed to pay him mechanical royalties for his song, "Message to the World." (UMG's Mem. of P. & A. in Opp'n to Mot. for Summ. J. at 3, 6.) UMG asserts that this claim is barred by a three-year statute of limitations. (*Id.* at 6.) UMG also claims that it "has not engaged in any conduct prohibited by the Copyright Act in the three years prior to the filing of this suit." (UMG's Mem. of P. & A. in Opp'n to Mot. for Summ. J. at 6.)

---

**17.** This Court will dismiss Crook's claims against BMI. Therefore, Crook's Amended Motion for Summary Judgment is moot as to Defendant BMI.

Specifically, UMG asserts that the album containing the song at issue has not been sold, nor has the song appeared as a single or on any other album, for at least the past five years. (*Id.*) Crook counters that the actual claim did not arise until February of 2002 because that was the first time he made a request for compensation for mechanical royalties. (Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. for Summ. J. & Opp'n to Def.'s request for Summ. J. at 12.)

17 U.S.C. § 507(b) states, "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." The Ninth Circuit "has held that a 'cause of action for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge.'" *Kling v. Hallmark Cards, Inc.,* 225 F.3d 1030, 1038 (9th Cir.2000) (quoting *Roley v. New World Pictures,* 19 F.3d 479, 481 (9th Cir.1994)).

UMG asserts that Crook had knowledge of his claim for unpaid royalties in 1977 when his alleged attorney, Roscoe C. Foreman ("Foreman"), sent a letter to UMG seeking payment for unpaid royalties. (UMG's Mem. of P. & A. in Opp'n to Mot. for Summ. J. at 6.) Crook asserts that he was not represented by Foreman in 1977 and that he has never even met Foreman. (Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. for Summ. J. and Opp'n to Def.'s request for Summ. J. at 2, 8.)

UMG and Crook thus dispute whether any demand for royalty payments was ever made to UMG on Crook's behalf in 1977. UMG presents no other evidence showing that Crook had knowledge of the alleged copyright claim prior to the filing of this action. Therefore, UMG has failed to show that "there is no genuine issue as to any material fact" concerning when Crook

knew, or was chargeable with knowledge, of his claim for copyright infringement. *See* Fed.R.Civ.P. 56(c).

#### ii. LACHES

UMG also asserts that Crook's claim is barred by the equitable doctrine of laches. (UMG's Mem. of P. & A. in Opp'n to Mot. for Summ. J. at 7.) UMG claims that Crook inexcusably delayed bringing suit and this delay resulted in prejudice to UMG. (*Id.* at 7, 9.)

"Laches is an equitable time limitation on a party's right to bring suit." *Kling v. Hallmark Cards, Inc.,* 225 F.3d 1030, 1036 (9th Cir.2000) (citing *Boone v. Mechanical Specialties Co.,* 609 F.2d 956, 958 (9th Cir.1979)). "To obtain a judgment on this affirmative defense, a defendant must prove 'both an unreasonable delay by the plaintiff and prejudice to itself.'" *Id.* at 1036 (quoting *Couveau v. American Airlines,* 218 F.3d 1078, 1083 (9th Cir.2000)). The general rule of laches is that the delay is "measured from the time that the plaintiff knew or should have known about the potential claim at issue." *Id.*

As explained above, whether Crook ever had an attorney that contacted UMG about royalty payments UMG allegedly owed Crook is unclear. UMG has not offered any other evidence showing that Crook knew or should have known about the claim. Therefore, UMG has failed to meet its burden of showing that "there is no genuine issue as to any material fact" concerning when Crook knew or should have known about the potential claim. *See* Fed. R.Civ.P. 56(c).

#### b. BREACH OF CONTRACT

UMG next contends that Crook's claim for breach of contract is barred by Neva-

da's six-year statute of limitations. (UMG's Mem. of P. & A. in Opp'n to Mot. for Summ. J. at 10.)

UMG does not dispute that Crook owns the copyright to the song "Message to the World." UMG also does not dispute that the song "Message to the World" appeared on the Chi–Lites Album that was recorded by UMG's predecessor and released in 1976. There is a dispute, however, as to whether the UMG Agreement is a valid contract. UMG claims that Crook never executed the UMG Agreement. (UMG's Mem. of P. & A. in Opp'n to Mot. for Summ. J. at 3.) Crook, on the other hand, claims that he does have a valid agreement with UMG that was dated May 13, 1977. (Am. Compl. at 5.)

Nevada Revised Statutes 111.190 states that a six-year statute of limitations applies to written contracts. Nev.Rev.Stat. 111.190 (1998). "[A]n action for breach of contract accrues as soon as the plaintiff knows or should know of the facts constituting the breach." *Bemis v. Estate of Bemis*, 114 Nev. 1021, 967 P.2d 437, 440 (citing *Soper v. Means*, 111 Nev. 1290, 903 P.2d 222, 224 (1995)). " 'When the plaintiff knew or in the exercise of proper diligence should have known of the facts constituting the elements of his cause of action is a question of fact for the trier of fact.' " *Soper*, 903 P.2d at 224 (quoting *Oak Grove Inv. v. Bell & Gossett Co.*, 99 Nev. 616, 668 P.2d 1075, 1079 (1983)).

Because UMG and Crook dispute whether Crook ever made a demand for royalties allegedly owed to Crook and UMG offers no other evidence proving that Crook knew or should have known about the breach, UMG has failed to meet its burden of showing that "there is no genuine issue as to any material fact" concerning when Crook knew or should have known about the potential claim. *See* Fed.R.Civ.P. 56(c).

**c. THEFT BY DECEPTION**

Crook cites no authority for the proposition that "theft by deception" is an actionable tort claim. Many states do have criminal statutes prohibiting "theft by deception." *See, e.g.,* Alaska Stat. § 23.30.250 (2003), N.J. Stat. § 2C:20–4 (2003), Or.Rev.Stat. § 164.085 (2001). However, a private party cannot sue for damages pursuant to a criminal statute.

Construing Crook's Complaint liberally, the theft by deception claim can be construed as a claim for fraud. Rule 9(b) of the Federal Rules of Civil Procedure states, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). Crook's Complaint does not sufficiently allege a cause of action for fraud. Crook has not specifically delineated any allegedly fraudulent statements or acts made by UMG. Therefore, if Crook wishes to allege a cause of action for fraud, he must file a motion requesting leave to amend his Complaint.

**VI. CONCLUSION**

IT IS THEREFORE ORDERED that Defendant Broadcast Music, Inc.'s Motion to Dismiss Plaintiff's Claims Against Broadcast Music, Inc. (pursuant to Fed. R.Civ.P. 12(b)(1) and 12(b)(6)), and Alternative Motion to Stay Action and Compel Arbitration (pursuant to 9 U.S.C. § 3) (Doc. # 15) is hereby GRANTED. Plaintiff General Crook's Amended Complaint is hereby DISMISSED as to Defendant Broadcast Music, Inc.

IT IS FURTHER ORDERED that Plaintiff General Crook's Motion to Strike

UMG [Recordings, Inc.]'s Answer to Amended Complaint (Doc. # 20) is hereby DENIED.

IT IS FURTHER ORDERED that Plaintiff General Crook's Motion for Summary Judgment (Doc. # 24) as amended by his Amended Motion for Summary Judgment (Doc. # 28) is hereby DENIED.

IT IS FURTHER ORDERED that Defendant UMG Recordings, Inc.'s Motion for Enlargement of Time to Oppose Plaintiff's Motion for Summary Judgment (Doc. # 26) is hereby GRANTED.

IT IS FURTHER ORDERED that Defendant Broadcast Music, Inc.'s Motion to Strike Plaintiff's Amended Motion for Summary Judgment (Doc. # 34) is hereby DENIED as moot.

IT IS FURTHER ORDERED that Defendant Broadcast Music, Inc.'s request for oral argument (Doc. # 31) is hereby DENIED.

IT IS FURTHER ORDERED that Plaintiff General Crook's request for oral argument (Doc. # 32) is hereby DENIED.

IT IS FURTHER ORDERED that Defendant UMG Recordings, Inc.'s request for summary judgment (Doc. # 36) is hereby GRANTED in part and DENIED in part. UMG Recording, Inc.'s Motion for Summary Judgment is GRANTED as to Plaintiff General Crook's claim for theft by deception. Plaintiff's claim for theft by deception is hereby DISMISSED. Defendant UMG Recording, Inc.'s request for summary judgment is DENIED in all other respects.

IT IS FURTHER ORDERED that Defendant Broadcast Music, Inc.'s Motion for Sanctions (Doc. # 37) is hereby DENIED.

IT IS FURTHER ORDERED that Plaintiff General Crook's Motion for Leave to File an Amended Pleading in Opposition to BMI's Motion to Dismiss or Alternatively to Compel Arbitration (Doc. # 40) is hereby DENIED.

IT IS FURTHER ORDERED that Defendant UMG Recording, Inc.'s Motion for Extension of Time to Complete Discovery (Doc. # 42) is DENIED as moot.

IT IS FURTHER ORDERED that Plaintiff General Crook's Motion for an Injunction to Prevent the Selling of Assets (Doc. # 49) and Motion to Disallow the Introduction of Letter from Roscoe C. Foreman Based on Lack of Credibility of the Author of the Letter (Doc. # 50), filed July 23, 2003, are also DENIED as moot.