*1291
 
 OPINION
 

 Per Curiam:
 

 Appellant Irwin S. Soper owned 160 acres near Laughlin, Nevada. Around 1974, he and respondent John A. Means discussed building and operating a trailer park on 15 acres of that land. Means started to develop the land for that purpose. In August 1975, the two men signed a written document relating to the agreement. Means stopped work on the project in early 1977 after expending more than $40,000.00 on it. He claimed that he was waiting for Soper to perform his contractual obligation and bring electricity to the site. Soper claimed that Means abandoned the project. In 1986, Means sued Soper for breach of contract. After a jury trial in 1993, Means was awarded one-half interest in the 15 acres.
 

 Soper asserts numerous errors on appeal, among them that the statute of limitations barred the action. We agree and reverse the judgment for that reason.
 

 FACTS
 

 The jury trial in this case commenced on June 2, 1993. Soper and Means had agreed to build a trailer park on land owned by Soper. A copy of a written agreement, dated August 5, 1975, and signed by both men, was entered into evidence. The document
 
 *1292
 
 stated that Soper and Means had recently formed a corporation to operate a mobile home park. It provided that Soper agreed to transfer to the corporation 15 acres from a described 160-acre parcel and that Means agreed to place into the corporate bank account the sum of $35,000.00. It further provided that each man had the right to purchase fifty percent of the outstanding stock of the corporation. The two men lined out and initialed a paragraph stating that they agreed to form and operate a utility company to service the property.
 

 At trial, both men agreed that the document did not contain their entire agreement. For example, the document did not identify the specific 15 acres at issue, did not specify how the park was to be built or what it would consist of, and did not specify how electrical power would be supplied to the site. Evidence at trial established the specific 15 acres. Other provisions of the agreement remained in dispute.
 

 Means testified as follows. Around 1973, Soper showed him plans for a 60-acre subdivision and a 15-acre trailer park on land owned by Soper. The two made an oral agreement that Means would put up $35,000.00 and start building the trailer park. Soper was responsible for bringing electrical power to the park since he had to bring power in for his subdivision. After Means had begun to spend money on the park, he drew up the written agreement, and he and Soper signed it. Means continued to develop the trailer park: he put in roads, dirt pads for trailers, sewer lines, and water lines, planted cottonwood trees, sank a well, and installed a water tank to water the trees. “I had it all ready all except for the electricity.” Means asked Soper if he was going to transfer the 15 acres to the corporation, and Soper told him that he could not do so yet because there was a lien against the 160 acres. Means ceased work on the trailer park in early 1977, when the trees were planted, and resumed working in the television industry in southern California.
 

 Means further testified that around this time Soper said that he could not afford to get the electricity in and suggested that each man invest $15,000.00 for that purpose. Means refused because he had already spent several thousand dollars more than originally agreed to. Means waited, expecting Soper to proceed with his subdivision and bring in power. The cottonwood trees were not watered and died around 1978. The corporation ceased to exist in March 1979. Means closed out the corporate account on January 2, 1980, and kept the funds, a total of $345.23. In 1980 or 1981, Means took a trailer he had placed at the trailer park site for use by a caretaker, sold it for no more than $600.00, and kept the money; he also took some pipe from the site. The roads at the site held up until about 1983. Means denied abandoning the
 
 *1293
 
 project; rather, he told Soper he had already spent more money than he had agreed to and would not come up with more “until something happened.”
 

 Soper testified as follows. Means had agreed to complete the first sixty to eighty units of the trailer park but ran out of money before doing so. He and Means had agreed that when those units were completed, the two would jointly put in a gas generator to supply power to the park. Means stopped work on the project around the end of 1975 or beginning of 1976. Soper and Means met in 1976 when work had stopped and discussed putting in a generator to produce electricity for twenty to thirty units. No agreement was reached. After Means quit working at the trailer park site, the brass faucets were taken from the water pipes, the caretaker’s trailer and generator were taken, the pump and pipe were taken from the well, and the well was filled with rocks. Soper did not know who did these things.
 

 Means and Soper both testified regarding a meeting they had around 1984. Means had learned that electricity had been brought to the 160 acres and met with Soper. According to Means, when he asked about proceeding with the trailer park, Soper “flew off the handle” because he felt that Means was trying to get involved again in the venture after walking away from it. Soper then offered to give Means his money plus some interest back, Means asked what he was talking about, and Soper said Means could get a lawyer if he wanted. According to Soper, Means said that he wanted “to come back in on the trailer park.” Soper refused, telling him that he would give him his money back, as had been discussed before. Soper testified that Means had originally liked that option, but since the value of the property had increased, Means would not accept it.
 

 Soper introduced evidence showing money he had expended up to December 18, 1986, to develop the 160 acres. This included $152,000.00 for a road to the subdivision, $96,000.00 for bringing in electricity, $46,480.00 for the water system, and $33,491.00 for the sewer system. By the time of the trial, the 15 acres in question were worth from one and a half to two million dollars, according to a real estate appraiser who testified for Means. The appraiser stated that from the early 1980s to the early 1990s, overall land values in the Laughlin area had risen significantly. Soper testified that in late 1986 he sold 20 acres, located near the 15 acres in question, for $22,500.00 per acre.
 

 The jury returned a verdict in favor of Means, and the district court entered judgment accordingly. Soper moved for a judgment notwithstanding the verdict or for a new trial. The court denied the motion.
 

 
 *1294
 

 DISCUSSION
 

 Soper contends that the statute of limitations for Means’s action for breach of contract ran before Means filed his complaint on January 28, 1986. The jury was properly instructed, per NRS 11.190(1) and (2), that a verdict for Soper was required in either of two situations: if it found that the action was founded upon an instrument in writing and the action had accrued before January 28, 1980 (more than six years before the filing), or if it found that the contract was not in writing and that the action had accrued before January 28, 1982 (more than four years before the filing). No instruction was given regarding how to determine when a cause of action accrues.
 

 “When the plaintiff knew or in the exercise of proper diligence should have known of the facts constituting the elements of his cause of action is a question of fact for the trier of fact.” Oak Grove Inv. v. Bell & Gossett Co., 99 Nev. 616, 623, 668 P.2d 1075, 1079 (1983). When a contract does not specify a time within which performance must be rendered, “what constitutes a reasonable period of time for performance must be determined from the nature of the agreement and the particular circumstances involved.” MacDonald v. Kassel, 97 Nev. 305, 307, 629 P.2d 1200, 1201 (1981). When a demand for performance by the plaintiff is necessary before a cause of action accrues, such demand must be made within a reasonable period of time under the circumstances. Southward v. Foy, 65 Nev. 694, 699-709, 201 P.2d 302, 304-09 (1948).
 

 This court upholds a jury verdict if there is substantial evidence to support it, but will overturn it if it was clearly wrong from all the evidence presented. Bally’s Employee’s Credit Union v. Wallen, 105 Nev. 553, 555-56, 779 P.2d 956, 957 (1989). In this case, substantial evidence does not exist to support finding that the statute of limitations was not violated. Perhaps this is not surprising since the jury received no guidance as to how to determine when a cause of action accrues. The statute began to run as soon as Means knew or should have known of facts constituting breach of contract. Since the contract did not specify a time by which Soper had to perform, a reasonable period of time for performance had to be determined from the nature of the agreement and the particular circumstances involved. If a demand for performance by Means was necessary before the cause of action accrued, he had to make it within a reasonable period of time under the circumstances.
 

 
 *1295
 
 Means last performed duties under the contract in early 1977. Although he claimed that at that time he felt he had fulfilled his obligations under the contract, he apparently did not feel that he had an action for breach of contract until the meeting with Soper in approximately 1984, when Soper told him he could get a lawyer. We conclude that Means knew or should have known that facts constituting breach of contract existed well before this. In the seven years from 1977 till 1984, Soper did not bring electricity to the 15 acres and never transferred the land to the corporation. During that time, Means spoke with Soper occasionally but never demanded that Soper provide the electricity or transfer the land. There was no evidence that after Means quit work on the trailer park, he relied on any particular words or actions by Soper to infer that Soper still intended to carry out his part of the bargain. On the contrary, Means testified that around early 1977 when he ceased work on the project, Soper informed him that he could not afford to get the electricity in and asked Means to invest more money for that purpose. Means refused and simply waited, while Soper continued to do nothing. This conversation in early 1977 was the last discussion with Soper that Means recounted in any detail until the 1984 meeting. Meanwhile, the trees died from lack of watering in 1978, the corporation’s charter was revoked in March 1979, and Means closed out the corporate account on January 2, 1980, and took pipe and the caretaker’s trailer from the site in 1980 or 1981.
 

 Under these circumstances, we conclude that it was not reasonable for Means to wait until the 1984 meeting before deciding that he had grounds for legal action under the contract. We conclude that Means’s cause of action accrued no later than January 2, 1980, when he closed out the corporate account. This was more than six years before he filed his complaint on January 28, 1986. Therefore, the action, even if based on a written instrument, was barred by the statute of limitations.
 

 CONCLUSION
 

 Means’s action accrued by January 2, 1980, when he closed the corporate account. Consequently, the filing of the action on January 28, 1986, was outside the period of limitations. We therefore reverse the district court’s judgment.