ALLSTATE INSURANCE COMPANY, Appellant, *v.*
WILLIAM MILLER, Respondent.

No. 49760

July 30, 2009 212 P.3d 318

---

[Rehearing granted October 28, 2009]

CHERRY, J., dissented in part. SAITTA, J., dissented.

*Lewis & Roca, LLP*, and *Daniel F. Polsenberg*, Las Vegas; *Prince & Keating, LLP*, and *Dennis M. Prince*, Las Vegas; *Luce Forward Hamilton & Scripps, LLC*, and *Ronald D. Getchey*, San Diego, California, for Appellant.

*Vannah & Vannah* and *Matthew R. Vannah*, Las Vegas, for Respondent.

# OPINION

By the Court, GIBBONS, J.:

This case arises from a bad-faith claim filed by William Miller against his insurer, Allstate Insurance Company. Miller sued Allstate for breach of contract, negligence, and bad faith. In particular, Miller sued Allstate under three theories of bad-faith liability. Miller alleged that Allstate breached the covenant of good faith and fair dealing by failing to file an interpleader complaint, failing to adequately inform Miller of a settlement offer, and refusing to agree to a stipulated judgment in excess of Miller's policy limits. At the conclusion of the trial, the jury returned a verdict in Miller's favor on the bad-faith claim. However, the district court denied Allstate's request to submit special interrogatories to the jury to determine upon which theory of bad faith the jury returned its verdict. Allstate appeals the jury verdict and the district court's denial of Allstate's motion for a new trial and judgment as a matter of law. Allstate challenges the legal sufficiency of Miller's three bad-faith theories and the district court's refusal to submit Allstate's special interrogatories to the jury.

In this appeal, we address an insurer's duties under the implied covenant of good faith and fair dealing and its duty to defend. Specifically, we address an insurer's duty to inform an insured regarding settlement opportunities and its duties regarding interpleading funds and stipulated judgments. We also address the standards that govern our review of a district court's refusal to give special interrogatories when requested by a party in a civil case.

Because a primary insurer's exercise of its right and duty to defend includes settlement duties and an insurer must give equal consideration to the insured's interest, we hold that the covenant of good faith and fair dealing includes a duty to adequately inform the insured of settlement offers. This includes reasonable offers in excess of the policy limits. Failure to adequately inform an insured is a factor to consider in a bad-faith claim and, if established, can be a proximate cause of any resulting damages. We conclude that whether Allstate violated its duty to adequately inform Miller of the settlement opportunities that existed in this case presented a question of fact for the jury. Therefore, the district court did not abuse its discretion when it submitted the failure-to-inform theory of bad faith to the jury.

Miller's two alternative theories of bad faith fail. Unless the policy says otherwise, an insurer does not have an independent duty to file an interpleader action on behalf of an insured. Nor is an insurer

required to agree to a proposed stipulated judgment between the insured and the claimant if that stipulated judgment is beyond the policy limits. As a result, we conclude that the district court erred when it submitted these issues to the jury.

Finally, we hold that the district court abused its discretion in refusing without explanation to give the jury the special interrogatories that Allstate proposed. Not giving special interrogatories in a case involving multiple claims or theories of liability compromises our ability to review the verdict for error, since it is often impossible to say after the fact whether a jury based its general verdict on a permissible or impermissible theory of liability. *See Skender v. Brunsonbuilt Constr. & Dev. Co.*, 122 Nev. 1430, 148 P.3d 710 (2006). Thus, we further hold that if a party submits special verdicts or interrogatories to the court pursuant to NRCP 49, the district court must approve or deny them on the record, and state its legal basis for doing so. Because the record in this case is silent regarding why the district court rejected Allstate's requested special interrogatories, we conclude that the district court abused its discretion. Therefore, we affirm in part and reverse in part the district court's judgment and remand this matter for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

Respondent William Miller struck and injured claimant Mark Hopkins. At the time of the accident, Miller's Allstate automobile insurance policy contained a bodily injury liability limit of $25,000.

After receiving a letter from attorney Steven Karen, which stated that he represented Hopkins, Allstate offered to settle Hopkins' claim for the $25,000 policy limit. Karen did not accept the offer on Hopkins' behalf. Allstate also informed Miller that Hopkins' damages already exceeded the $25,000 policy limit, that Miller may be personally liable for any damages above the $25,000 limit, and that he had the right to hire independent legal counsel at his own expense.

About a month later, attorney David Sampson replaced Karen as Hopkins' lawyer. Karen then notified Allstate of his $8,325 attorney fee lien. Later, University Medical Center (UMC) informed Allstate of its $67,564.84 hospital lien. Although Sampson told Allstate that Hopkins would not accept a policy-limit check with the lienholders' names included as joint payees, Allstate still sent him a $25,000 check made jointly payable to Hopkins, Sampson, Karen, and UMC. Sampson rejected the multiple-party joint check and advised Allstate that Hopkins was willing to release Miller from all liability if Allstate would agree to file an interpleader action, pursuant

to NRCP 22, to determine the rights of Hopkins, Sampson, Karen, and UMC as to the $25,000.

Allstate initially declined Hopkins' interpleader offer, stating that it could not represent Hopkins in an interpleader action. However, just a few months later, and weeks after Hopkins filed his lawsuit against Miller, Allstate changed its position and agreed to file the interpleader action. By this time, Hopkins' previous settlement offer had expired. Later, Hopkins made the following settlement offer to Miller: if Miller agreed to execute an excess stipulated judgment, Hopkins would release Miller from execution of the judgment if Miller pursued a bad-faith lawsuit against Allstate. Hopkins stated that this would cap Miller's liability. Allstate rejected this proposal and cautioned that without its consent, the stipulated judgment could not bind Allstate. Allstate also explained that if Miller agreed to the stipulated judgment, then issues could arise regarding his insurance policy's cooperation clause.[1] Miller did not accept the offer. Subsequently, Hopkins obtained a verdict against Miller totaling $703,619.88.

Miller filed a complaint against Allstate, alleging that Allstate breached its covenant of good faith and fair dealing when it failed to file an interpleader complaint, failed to adequately inform Miller of Hopkins' settlement offer(s), and refused to consent to Hopkins' stipulated excess judgment. After a seven-day trial, Allstate requested that the district court submit to the jury three special interrogatories. Allstate's special interrogatories focused on Miller's three theories of bad faith and asked which theory the jury found persuasive. The district court refused to submit the special interrogatories to the jury. Subsequently, the jury returned a general verdict in favor of Miller for $1,079,784.88. The district court entered a judgment on the verdict for that amount. Allstate filed a motion for a new trial and a renewed motion for judgment as a matter of law, which challenged Miller's three bad-faith theories and the district court's refusal to submit Allstate's special interrogatories. The district court denied these motions. Allstate now appeals.

## DISCUSSION

In this case, Miller alleged three theories of bad-faith liability: (1) Allstate's failure to file an interpleader complaint, (2) its failure to inform Miller of Hopkins' interpleader offer, and (3) its refusal to agree to Hopkins' excessive stipulated judgment. We first address the standards of review that apply to jury verdicts and a district court's denial of a new trial and judgment notwithstanding the verdict before turning to the merits of this appeal.

---

[1] However, Allstate did not offer to retain independent counsel to advise Miller regarding this offer.

## I. *Standards of review*

The standards of review for reversing a jury verdict and reversing a district court's denial of a motion for a new trial are different.

■■■■■

In reviewing a jury verdict, "[t]his court upholds a jury verdict if there is substantial evidence to support it, but will overturn it if it was clearly wrong from all the evidence presented." *Soper v. Means*, 111 Nev. 1290, 1294, 903 P.2d 222, 224 (1995). As a result, the jury verdict in this case cannot be reversed unless there is a lack of substantial evidence that Allstate violated the implied covenant of good faith and fair dealing.

■■■■■

We review for abuse of discretion both the district court's denial of Allstate's request to submit the special interrogatories and its denial of a motion for a new trial. *Lehrer McGovern Bovis v. Bullock Insulation*, 124 Nev. 1102, 1110, 197 P.3d 1032, 1037-38 (2008); *Skender*, 122 Nev. at 1435, 148 P.3d at 714.

We now turn to the question of whether Allstate had a duty to inform Miller of Hopkins' interpleader offer, and whether Allstate was obligated to file an interpleader action on behalf of Miller. We then address whether Allstate had a duty to accept Hopkins' proposed stipulated excess judgment.

## II. *The implied covenant of good faith and fair dealing includes a duty to adequately inform*

Allstate argues that Miller's failure-to-inform theory, which he bases upon the allegation that Allstate failed to advise Miller about the interpleader offer, is inapplicable to this case because the issue was whether Allstate would agree to be the plaintiff in an interpleader action. We disagree. We conclude that under the facts of this case, Miller's failure-to-inform theory is a viable basis for an allegation of bad faith against Allstate.

■■■■■

One of the issues in this appeal is Allstate's obligations under the implied covenant of good faith and fair dealing. The law, not the insurance contract, imposes this covenant on insurers. *United States Fidelity v. Peterson*, 91 Nev. 617, 620, 540 P.2d 1070, 1071 (1975). A violation of the covenant gives rise to a bad-faith tort claim. *Id.* This court has defined bad faith as "an actual or implied awareness of the absence of a reasonable basis for denying benefits of the [insurance] policy." *Am. Excess Ins. Co. v. MGM*, 102 Nev. 601, 605, 729 P.2d 1352, 1354-55 (1986).

We first discuss the relationship between an insurer's duty to defend and the implied covenant of good faith and fair dealing. Then we discuss an insurer's duty to inform its insured of a settlement offer. Afterwards, we apply the duty to inform to the facts of this case.

A. *The relationship between an insurer's duty to defend and the implied covenant of good faith and fair dealing*

Primary liability insurance policies create a cascading hierarchy of duties between the insurer and the insured. At the top of this hierarchy are two general duties: the duty to defend and the duty to indemnify. The obligation of the insurer in the duty to indemnify is narrower than the insurer's duty to defend. *Crawford v. Weather Shield Mfg. Inc.*, 187 P.3d 424, 427 (Cal. 2008). But we do not address the duty to indemnify in this case.

Instead, this case implicates the scope of an insurer's duty to defend. The duty to defend contains two potentially conflicting rights: the insurer's right to control settlement discussions and its right to control litigation against the insured. 14 *Couch on Insurance 3d* §§ 200:1, 203:1 (2005). Each of these contractual rights creates additional duties for the insurer. The right to control settlement discussions creates the duty of good faith and fair dealing during negotiations. *See Couch, supra*, § 203:1 (stating that the insurer's right to control settlement negotiations may create a conflict of interest between the insurer and the insured, and therefore, the insurer must act in good faith and give the insured's interests equal consideration with its own). The right to control litigation creates the duty to defend the insured from lawsuits within the insurance policy's coverage. *Couch, supra*, § 200:1.

A primary insurer's right and duty to defend attaches when the insured tenders defense of the lawsuit to the insurer and carries with it the duty to communicate to the insured any reasonable settlement offer that could affect the insured's interests. *Heredia v. Farmers Ins. Exchange*, 279 Cal. Rptr. 511, 519-20 (Ct. App. 1991). Thus, an insurer's duty to adequately inform the insured begins upon receipt of a settlement demand and continues through litigation to final resolution of that claim. As a result, if an insurer fails to adequately inform an insured of a known reasonable settlement opportunity *prior* to the filing of a claimant's lawsuit, the insurer may breach its duty of good faith and fair dealing. If the insurer fails to adequately inform an insured of such an opportunity *after* the filing of a claimant's lawsuit, then the insurer has breached its duty to defend the insured against lawsuits.

## B. *Failure to adequately inform is a factor in a bad-faith claim*

Miller asserts that Allstate incorrectly informed him that Hopkins was still considering Allstate's policy-limits offer, and it failed to inform him of the possibility of his contributing to a settlement or initiating an interpleader action on his own. Miller testified that Natasha Szumilo, Allstate's claims adjustor, never mentioned the word "interpleader" or provided him with the opportunity to contribute additional monies to the $25,000 settlement offer or for Miller to initiate or pay for the interpleader action that Hopkins made part of his demand. Miller also testified that Allstate informed him there was a settlement offer, but "[Szumilo] told me basically that Mr. Hopkins' attorney was asking her to do things that they don't do because they don't represent his client." Miller also testified that when he spoke to Szumilo, she stated that Hopkins had not rejected Allstate's policy-limits offer. However, she failed to tell him that Hopkins had conditionally rejected the offer unless Allstate agreed to file an interpleader complaint.

Although not confirmed in Szumilo's testimony, there is a notation in Miller's file that Allstate advised Miller of Hopkins' settlement offer, but there are no details of what Allstate specifically told Miller. However, Allstate failed to provide testimonial evidence that there was no realistic possibility for settlement within the $25,000 policy limit or that Miller would not have filed, or made any contribution to the filing of, an interpleader complaint. Therefore, whether Allstate could have settled with Hopkins within the policy limits in conjunction with Miller is a disputed issue of material fact that the trier of fact must resolve.

In addition, whether Allstate adequately informed Miller of Hopkins' settlement offer is also a question of fact. This court has previously held that a bad-faith action applies to more than just an insurer's denial or delay in paying a claim. *Guaranty Nat'l Ins. Co. v. Potter*, 112 Nev. 199, 206, 912 P.2d 267, 272 (1996). An insurer's failure to adequately inform an insured of a settlement offer may also constitute grounds for a bad-faith claim. *Allen v. Allstate Ins. Co.*, 656 F.2d 487, 489 (9th Cir. 1981); *Miller v. Elite Ins. Co.*, 161 Cal. Rptr. 322, 332 (Ct. App. 1980). Many jurisdictions hold that failure to inform is a factor in a bad-faith claim. *Couch*, *supra*, § 203:16. We now join these jurisdictions and conclude that an insurer's failure to adequately inform an insured of a settlement offer is a factor for the trier of fact to consider when evaluating a bad-faith claim.

This duty to adequately inform an insured arises from the special relationship between the insured and the insurer, which is similar to a fiduciary relationship. *Ainsworth v. Combined Ins. Co.*, 104 Nev. 587, 592, 763 P.2d 673, 676 (1988) (describing the insurer-insured relationship as one of "special confidence"); *Love v. Fire Ins. Exchange*, 271 Cal. Rptr. 246, 251-52 (Ct. App. 1990) (refusing to characterize the insurer-insured relationship as fiduciary but acknowledging it is a "fiduciary-type" relationship). Although this court has refused to adopt a standard where an insurance company must place the insured's interests over the company's interests, the nature of the relationship requires that the insurer adequately protect the insured's interest. *Powers v. United Servs. Auto. Ass'n*, 114 Nev. 690, 701-02, 962 P.2d 596, 603 (1998), *modified on other grounds*, *Powers v. United Servs. Auto. Ass'n*, 115 Nev. 38, 979 P.2d 1286 (1999). Thus, at a minimum, an insurer must equally consider the insured's interests and its own. *Love*, 271 Cal. Rptr. at 253.

In considering an insured's interests, the insurer must realize that the elements of bad faith include more than an insurer's rejection of a settlement offer within the policy limits. *See Guaranty*, 112 Nev. at 206, 912 P.2d at 272 (holding that a bad-faith action applies to more than just an insurer's denial or delay in paying a claim, such as paying from an independent medical examination); *Anderson v. State Farm Mut. Ins. Co.*, 2 P.3d 1029, 1031 (Wash. Ct. App. 2000) (holding, as a matter of law, that bad faith includes an insurer's failure to disclose the existence of underinsured/uninsured motorist coverage to an injured insured).

Allstate contends that since it offered Miller's policy limits within 13 days of the accident and it subsequently issued a check with the claimant and lienholders' names, it cannot be liable for bad faith. We disagree. A primary liability insurer's duty to its insured continues from the filing of the claim until the duty to defend has been discharged. We refuse to adopt the absolute rule that a primary liability insurer's bad-faith liability ends upon a timely offer of the insured's policy limits. While in most cases an insurer's timely policy-limit offer negates a finding of bad faith because the insurer has fulfilled its contractual obligations, the mere offering of the policy limit does not necessarily end a primary liability insurer's contractual obligations, specifically, its duty to defend the insured. *See United Nat'l Ins. Co. v. Frontier Ins. Co.*, 120 Nev. 678, 687, 99 P.3d 1153, 1158 (2004) (stating that once the duty to defend arises, because of an insured's potential liability, the insurer's duty continues throughout the entire litigation); 22 Eric Mills Holmes, *Holmes' Appleman on Insurance 2d* § 137.4[B] (2003). Further, the law

binds the insurer, through the implied covenant of good faith and fair dealing, to discharge its remaining duties in a reasonable manner. *See* NRS 687A.150 (immunizing all member insurers from liability for reasonable actions taken during performance of their duties).

Particularly, courts have recognized that an insurer's failure to adequately inform an insured of a settlement offer is also grounds for a bad-faith claim. *Allen*, 656 F.2d at 489; *Miller*, 161 Cal. Rptr. at 332; *Loudon v. State Farm Mut. Auto. Ins. Co.*, 360 N.W.2d 575, 579 (Iowa Ct. App. 1984); *Henke v. Iowa Home Mut. Cas. Co.*, 97 N.W.2d 168, 174 (Iowa 1959) (holding that failure to adequately inform insured of possible excess liability or the status of settlement negotiations may indicate bad faith); *Prosser v. Leuck*, 592 N.W.2d 178, 183 (Wis. 1999) (holding that an insurer's fiduciary duty includes timely informing the insured of *any* settlement offers received). Some courts even go as far as to hold insurers liable for bad faith not only for failing to adequately inform, but also for failing to advise the insured to contribute. *Oppel v. Empire Mut. Ins.*, 517 F. Supp. 1305, 1306 (S.D.N.Y. 1981) (applying New York law).

In recognizing an insurer's bad-faith liability for failing to inform an insured of a settlement offer, other courts have outlined specific factors to consider. In *Archdale v. American International Specialty Lines*, 64 Cal. Rptr. 3d 632 (Ct. App. 2007), the California Court of Appeal stated that the following considerations are relevant in determining whether an insurer's settlement actions were reasonable: (1) "the insurer must give the interests of the insured at least as much consideration as it gives to its own interests," and (2) the insurer must act as "a prudent insurer *without policy limits*." *Id.* at 644-45 (emphasis added). Similarly, the Louisiana Court of Appeal has stated that the interest of the insured is paramount when considering a settlement offer, and the following factors address whether the insurer acted in bad faith when refusing to settle:

> (1) the probability of the insured's liability; (2) the adequacy of the insurer's investigation of the claim; (3) the extent of damages recoverable in excess of policy coverage; (4) the rejection of offers in settlement after trial; (5) the extent of the insured's exposure as compared to that of the insurer; and (6) *the nondisclosure of relevant factors by the insured or insurer*.

*Fertitta v. Allstate Ins. Co.*, 439 So. 2d 531, 533 (La. Ct. App. 1983) (emphasis added).

Here, Sampson, Hopkins' attorney, testified that Hopkins would have released Miller if Allstate had filed an interpleader complaint naming Hopkins and the lienholders, or transmitted the $25,000 bodily injury limit to Sampson with an express agreement for Samp-

son to distribute the monies pursuant to a district court interpleader order. In other words, Allstate had two choices regarding the $25,000 policy limit: it could either issue a check to Hopkins and Sampson without naming the lienholders and allow Sampson to file the interpleader action, in which case Sampson would distribute the monies pursuant to a district court order, or it could deposit the monies with the court clerk and file the interpleader action itself. Under NRCP 22, either Allstate or Hopkins had standing to commence the interpleader action. Regardless of whether Allstate or Hopkins initiated the interpleader action, Hopkins was willing to release Miller under either of these options.

If Allstate was opposed to filing the interpleader action itself and it was concerned about releasing the funds to Hopkins without the lienholders' names on the check, there was a third logical option. Allstate could have approached Miller with Hopkins' settlement offer and asked Miller to initiate the interpleader action pursuant to NRCP 22 once Allstate deposited the funds with the district court. The funds could only be distributed pursuant to a district court order. Allstate, however, never disclosed the details of Hopkins' offer to Miller. Thus, Allstate denied Miller the opportunity to contribute to Hopkins' settlement offer in exchange for Miller's release.

In sum, Allstate could have obtained a release for Miller simply by initiating an interpleader action itself or by depositing the $25,000 bodily injury limit with the district court clerk and allowing either Hopkins or Miller to initiate the interpleader action. *See* NRCP 22 (allowing either a plaintiff or defendant to initiate an interpleader action). But Allstate never told Miller about the details of Hopkins' settlement offer. Therefore, there is a factual dispute as to whether Allstate complied with its duty to adequately inform Miller of the offer and to protect Miller's interests.

As a result, we conclude that Miller's failure-to-inform theory is a viable basis for bad faith by itself, regardless of whether Allstate had a duty to file an interpleader complaint. Miller's allegation that Allstate did not adequately inform him of Hopkins' settlement offer is a question of fact. *Allen*, 656 F.2d at 489 (recognizing that under California law ''What is 'good faith' or 'bad faith' on an insurer's part has not yet proved susceptible to [definitive] legal definition. An insurer's 'good faith' is essentially a matter of fact.''). Thus, the district court did not abuse its discretion when it submitted this issue to the jury. *Id.*

### 1. *Failure to adequately inform is a proximate cause of an insured's damages*

If an insurer violates its duty of good faith and fair dealing by failing to adequately inform the insured of a reasonable settlement op-

portunity, the insurer's actions can be a proximate cause of the insured's damages arising from a foreseeable settlement or excess judgment. *See Stark Liquidation v. Florists' Mut. Ins.*, 243 S.W.3d 385, 399 (Mo. Ct. App. 2007) (holding that an insurer who denies coverage is liable for the reasonable settlement costs incurred by the insured); *Noya v. A.W. Coulter Trucking*, 49 Cal. Rptr. 3d 584, 589-90 (Ct. App. 2006) (holding that a reasonable settlement is presumptive evidence of an insurer's liability for breach of its obligations). In *Neal v. Farmers Ins. Exchange*, 582 P.2d 980, 986 (Cal. 1978), the California Supreme Court held that once an insurer violates its duty of good faith and fair dealing, it is liable to pay all compensatory damages proximately caused by its breach; however, punitive damages require proof of motive and intent to violate a duty. The insurer may challenge the reasonableness of a damages amount, but its breach of duty is a proximate cause of the insurer's reasonable damages. *Noya*, 49 Cal. Rptr. 3d at 589-90.

Here, according to Allstate's own computerized record dated April 12, 2001, Miller never saw Hopkins approaching the intersection, and nothing prevented him from seeing Hopkins. The record also notes that Hopkins' damages, as of that date, were approximately $45,000. As a result, Allstate recognized that Miller's case was a "clear limits case," meaning damages already exceeded the policy limits, and authorized resolution of the matter as soon as possible. Given Allstate's recognition of Miller's excess liability, Allstate's failure to adequately inform Miller of Hopkins' settlement offer may have prevented Miller from obtaining a release from Hopkins. The trier of fact could therefore conclude that Allstate's actions were a proximate cause of the excess verdict against Miller.

### 2. Application of Allstate's duty to inform to the facts of this case

Here, Miller asserts that Allstate incorrectly informed him that Hopkins had not rejected Allstate's offer and it failed to inform him of the possibility of Miller's contributing to an interpleader action. At trial, Miller testified that he would have paid Allstate's interpleader costs and that he had the financial capability to do so, although on cross-examination Miller admitted that he did not know how much the action would cost.

We conclude that regardless of whether Miller had the financial capabilities to pay for the action, Allstate should have informed him of the settlement offer. Instead, Allstate rejected Hopkins' offer and told Miller that Hopkins was still considering Allstate's policy-limit offer. Allstate breached its duty to inform when it failed to inform Miller of the offer. Miller could have chosen at that time to hire independent counsel to review the offer and pursue any avail-

able options, such as initiating an interpleader complaint at his expense or contributing additional funds to Allstate's $25,000 settlement offer in return for a release from Hopkins. At a minimum, Allstate's failure to adequately inform Miller of Hopkins' settlement offer prevented Miller from considering his available options. Thus, Miller's failure-to-inform theory is viable and applies to the facts of this case.

C. *Miller is not required to show that there was a possibility of settling within the policy limits before he can proceed with his failure-to-inform theory of bad faith*

Generally, "[a]n insurer who has no opportunity to settle within policy limits is not liable for an excess judgment for failing to settle the claim." 14 *Couch on Insurance 3d* § 203:18 (2005). "Other courts have held that the absence of a settlement offer within policy limits is not dispositive of the issue of the insurer's good or bad faith, but just one of the factors in determining whether an insurer acted in bad faith by failing to settle." *Id.* § 203:20 (citing *Berglund v. State Farm Mut. Auto. Ins. Co.*, 121 F.3d 1225, 1228 (8th Cir. 1997); *Hartford Ins. Co. v. Methodist Hosp.*, 785 F. Supp. 38, 40 (E.D.N.Y. 1992); and *State Auto. Ins. Co. of Columbus, Ohio v. Rowland*, 427 S.W.2d 30, 35 (Tenn. 1968)). Regardless, if there is a question of whether a settlement offer is within the policy limits or whether the insured has the ability or willingness to contribute to the offer's excess, then the issues "should be resolved in favor of the insured, *unless the insurer can show by affirmative evidence that there was no realistic possibility for settlement within [policy] limits and that the insured would not have made any contribution to a settlement above that amount.*" *Id.* § 203:18 (emphasis added).

For example, if a claimant offers to settle for the policy limits plus court costs, then the insurer must relay that offer to the insured. Although the offer is technically beyond the policy limits, the insurer must provide the insured the opportunity to independently consider his options. In order to receive the full benefit of the special relationship between the insurer and the insured, the insurer must adequately inform the insured of the status of his case. This does not imply that the insurer must accept an excessive settlement demand; rather, it requires that the insurer adequately inform the insured so the latter can protect his interests.

Therefore, whether Hopkins' offer to Allstate was one that Allstate reasonably should have communicated to its insured so that he could, with Allstate's policy limits, protect himself by seeking the lien resolution by interpleader that Hopkins was demanding, was a

disputed issue of law and fact at the trial. At trial, Sampson, Hopkins' attorney, testified that Hopkins would have released Miller if Allstate had either: (1) filed an interpleader complaint naming Hopkins and the lienholders or (2) deposited the $25,000 bodily injury limit with the district court clerk and allowed Hopkins to initiate the interpleader complaint. Allstate did not refute Sampson's testimony on cross-examination or through its own witnesses. Instead, Allstate argued that the responsibility to interplead was beyond the policy obligation and it had to protect the lienholders despite its subsequent offer to file the interpleader action. Therefore, whether all the liens could be satisfied for $25,000 is not the determining factor as to Allstate's duty to Miller. If Allstate had deposited the $25,000 with the court clerk in order to facilitate an interpleader complaint, it would still have been Hopkins' responsibility to resolve his liens. However, Hopkins' lienholders would have no further claims against either Miller or Allstate.

In *Trustees v. Developers Surety*, this court noted that when a party is exposed to different claims, an interpleader proceeding may be initiated under NRCP 22

> to avoid exposure to double or multiple liability. The claims do not have to be identical or have a common origin. The court has the discretion to approve the interpleader and permit the [party] to deposit the [monies] remaining . . . limits with the court. The court may then discharge the [party] from any further liability and equitably distribute the proceeds among the various claimants.

120 Nev. 56, 64, 84 P.3d 59, 63-64 (2004) (citations omitted). Therefore, we conclude that the district court's decision to submit this issue to the jury was not an abuse of discretion. The evidence presented by Miller established that Allstate could have received a release for Miller from Hopkins by either initiating the interpleader action, or in exchange for Allstate depositing the $25,000 with the district court clerk and Miller paying for the costs of the interpleader action.

Other courts have held that "an insurer can be liable for bad faith failure to settle even where a demand exceeds policy limits if the insured is willing and able to pay the amount of the proposed settlement that exceeds policy coverage." *Couch, supra,* § 203:20 (citing *Continental Cas. Co. v. United States Fid. & Guar. Co.*, 516 F. Supp. 384, 388 (N.D. Cal. 1981)). We agree. Miller testified at trial that he would have contributed towards a settlement in excess of $25,000 by paying court costs and attorney fees to file an interpleader complaint and that he had the financial capability to do so.

In rebuttal, Allstate's attorney questioned Miller about his understanding of the costs associated with an interpleader action. However, at no point during this cross-examination did Allstate ask Miller what the limit was that he could afford to contribute or demonstrate that he would not have contributed towards either the interpleader action or a settlement with Hopkins in excess of $25,000. Therefore, Miller's financial ability and willingness to contribute money to effectuate a settlement with Hopkins became an issue of fact for the jury to resolve.

### D. *Allstate did not have an independent duty to file an interpleader action*

Miller asserts that Allstate had an independent duty to file an interpleader action on Miller's behalf. When there is a genuine dispute regarding an insurer's legal obligations, the district court can determine if the insurer's actions were reasonable. *See Lunsford v. American Guarantee & Liability Ins. Co.*, 18 F.3d 653, 656 (9th Cir. 1994) (interpreting California law); *CalFarm Ins. Co. v. Krusiewicz*, 31 Cal. Rptr. 3d 619, 629 (Ct. App. 2005) (holding that if an insurer's reasonableness depends on legal precedent, then the issue is reviewed de novo). This court reviews de novo the district court's decision in such cases and evaluates the insurer's actions at the time it made the decision. *CalFarm Ins. Co.*, 31 Cal. Rptr. at 629.

In *Homeowners Ass'n v. Associated International Insurance Co.*, 108 Cal. Rptr. 2d 776, 783 (Ct. App. 2001), the California Court of Appeals held that a bad-faith claim requires a showing that the insurer acted in deliberate refusal to discharge its contractual duties. Thus, if the insurer's actions resulted from " 'an honest mistake, bad judgment or negligence,' " then the insurer is not liable under a bad-faith theory. *Id.* (quoting *Careau & Co. v. Security Pacific Business Credit, Inc.*, 272 Cal. Rptr. 387 (Ct. App. 1990)); *see Pemberton v. Farmers Ins. Exchange*, 109 Nev. 789, 793, 858 P.2d 380, 382 (1993) (holding that bad faith exists when an insurer acts without proper cause); *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 669 (9th Cir. 2003) (interpreting and applying California law and holding that to prove bad faith, plaintiff must show insurer unreasonably or without cause withheld benefits due under the policy).

An insurer's obligations arise from the insurance contract and the law. Miller's policy did not require Allstate to file or prosecute an interpleader action to resolve a third-party claimant's liens. Further, there are some circumstances where an insurer has a contractual duty to resolve lienholder claims, but that duty does not extend to a third-party claimant and its lienholders. In other words, an insurer

is not required to resolve lienholder claims unless the insurance policy names the lienholder as a loss payee, the claimant is the insured, or the insured assigns the policy to the lienholder. *Allied Mut. v. Midplains Waste Management*, 612 N.W.2d 488, 499 (Neb. 2000). Thus, an insurer is not required to resolve a third-party claimant's liens when the duty is not included in the insurance policy. *See Heredia v. Farmers Ins. Exchange*, 279 Cal. Rptr. 511, 515-16 (Ct. App. 1991) (stating that the insurer is not required to accept an offer of settlement for more than the policy limits). Here, Allstate was not contractually obligated to file an interpleader action on Miller's behalf. However, an insurer still has obligations under the duty to defend, which is a legal duty that arises under the law, as opposed to a contractual duty arising from the policy.

 ██ ██

We conclude that under the factual circumstances presented in this case, an insurer's refusal to file an interpleader action on behalf of an insured may be a factor to consider in a bad-faith lawsuit.[2] Although interpleader actions are available in specific contexts—potential liability to multiple, conflicting claimants—an insurer is under no contractual obligation to commence an interpleader action. Regardless, as set forth above, the failure to advise an insured of his or her ability to file an interpleader action may be grounds for bad faith for breach of the duty to defend. *Benefit Trust Life Ins. Co. v. Union Nat. Bank*, 776 F.2d 1174, 1177-78 (3d Cir. 1985); *Schwartz v. State Farm Fire and Cas. Co.*, 106 Cal. Rptr. 2d 523, 533 (Ct. App. 2001). Here, Allstate rejected Hopkins' demand to file an interpleader complaint without informing Miller of the settlement offer. Thus, Allstate's refusal to file an interpleader complaint on Miller's behalf is a factor to consider in determining whether Allstate adequately informed Miller, and therefore, whether it adequately defended Miller.

### III. *Miller's stipulated-judgment theory is not viable*

 ██

Although we conclude that Miller's failure-to-inform theory of bad-faith liability is viable, we must also address his theory regarding Hopkins' stipulated-excess-judgment offer.

Allstate argues that the district court abused its discretion when it submitted Jury Instruction No. 42, which addressed Allstate's refusal to accept as binding Hopkins' stipulated judgment. We agree, because Allstate had no duty to accept a stipulated excess judgment.

---

[2]We also note that an insurer cannot rely upon a perceived conflict of interest to avoid filing an interpleader action because an insurer can give the insured and claimant an opportunity to waive any potential conflicts.

This court reviews for abuse of discretion a district court's decision to give a jury instruction. *Skender v. Brunsonbuilt Constr. & Dev. Co.*, 122 Nev. 1430, 1435, 148 P.3d 710, 714 (2006). However, we review de novo whether "a proffered instruction is an incorrect statement of the law." *Cook v. Sunrise Hospital & Medical Center*, 124 Nev. 997, 1003, 194 P.3d 1214, 1217 (2008). If a jury instruction is a misstatement of the law, it only warrants reversal if it caused prejudice and "but for the error, a different result might have been reached." *Id.* at 1006, 194 P.3d at 1219.

Here, Jury Instruction No. 42 stated that "[t]he implied covenant of good faith and fair dealing requires an insurance company to not unreasonably withhold its consent to enter into a stipulated judgment in excess of the policy limits." According to Allstate, the instruction was improper for, among other reasons, the following: the instruction (1) failed to clearly outline the terms of Hopkins' offer, (2) purportedly created a rule that held an insurer liable for bad faith for failing to consent to a stipulated excess judgment, and (3) required Allstate to take on noncontractual obligations. We agree and conclude that the district court abused its discretion when it submitted Jury Instruction No. 42 for the following two reasons.

First, Sampson's May 13, 2003, letter did not contain all necessary terms of the settlement, namely the exact dollar amount. Therefore, the offer was not sufficiently defined. Second, the instruction is a misstatement of the law for two reasons. Allstate has a contractual right to have an underlying judgment determined by trial or settlement, and it is not required under the implied covenant of good faith and fair dealing to accept an excessive stipulated settlement offer between the insured and the claimant. *See Crisci v. Security Insurance Co. of New Haven, Conn.*, 426 P.2d 173, 176-77 (Cal. 1967) (holding that the implied covenant of good faith and fair dealing only requires an insurer to accept a reasonable settlement). In addition, Allstate is not required to take on monetary obligations outside its insurance contract, which includes agreeing to an excessive settlement offer. *See Hamilton v. Maryland Cas. Co.*, 41 P.3d 128, 138 (Cal. 2002) (holding that a stipulated judgment is not a presumptive measure of an insured's damages for the insurer's unreasonable rejection of settlement offers). As a result, the district court's submission of the jury instruction was an error of law because the jury may have relied upon it when the jury rendered its verdict. For these reasons, Miller's excessive-stipulated-judgment theory is not viable.

We next address whether the district court erred in denying Allstate's requests to submit its special interrogatories and for a new trial.

IV. *The district court abused its discretion when it denied Allstate's request to submit its special interrogatories to the jury*

Allstate argues that the district court erred when it denied Allstate's request to submit special jury interrogatories. We agree. Allstate requested the following special interrogatories:

> 1. If you found that Allstate breached the covenant of good faith and fair dealing, did you find that Allstate breached a duty to file an interpleader action?
>
> 2. If you found that Allstate breached the covenant of good faith and fair dealing, did you find that Allstate breached a duty to keep Mr. Miller informed of settlement offers?
>
> 3. If you found that Allstate breached the covenant of good faith and fair dealing, did you find that Allstate breached a duty not to unreasonably withhold consent for Mr. Miller to enter into a stipulated judgment in excess of policy limits?

This court reviews for abuse of discretion a district court's determination to permit or refuse special interrogatories, and this court upholds the district court's decision unless it was arbitrary or capricious. *Skender*, 122 Nev. at 1435, 148 P.3d at 714.

Here, Miller asserted three claims: breach of contract, negligence, and breach of the covenant of good faith and fair dealing. In addition to Miller's three separate claims, Miller's bad-faith claim encompassed the following three subtheories: Allstate's failure to (1) file an interpleader complaint, (2) inform Miller of the interpleader offer and provide him with the opportunity to contribute, and (3) consent to a stipulated judgment. As discussed above, only the second of these theories was viable, and it is unclear under which theory the jury concluded that Allstate breached the implied covenant of good faith and fair dealing.

There are two perspectives regarding general verdicts. On one hand, there is the absolute certainty rule, which almost always requires reversal when there is an invalid theory presented to the jury. *See Kern v. Levolor Lorentzen, Inc.*, 899 F.2d 772, 782, 790 (9th Cir. 1990) (Kozinski, J., dissenting) (citing United States Supreme court cases from 1884, 1907, 1959, and 1962). On the other hand, *other courts uphold a general verdict if there is sufficient evidence to support at least one viable theory. Kern*, 899 F.2d at 777-78; *McCord v. Maguire*, 873 F.2d 1271, 1273-74, *amended by* 885 F.2d 650 (9th Cir. 1989). In *Gillespie v. Sears, Roebuck & Co.*, the First Circuit stated that the rule in that circuit is " 'a new trial is usually warranted if evidence is insufficient with respect to any one of multiple claims covered by a general verdict.' " 386 F.3d 21, 29 (1st Cir. 2004) (quoting *Kerkhof v. MCI Worldcom, Inc.*, 282

F.3d 44, 52 (1st Cir. 2002)). The First Circuit applies this rule to both general verdicts covering multiple claims and "special verdicts where a single verdict question encompasses multiple theories, one of which is defective." *Id.* at 30.

Although we do not go as far as the First Circuit by holding that a new trial is warranted whenever a general verdict encompasses a nonviable legal theory, we are holding that district courts should follow *Skender* by submitting timely and properly proposed special verdicts or interrogatories when a plaintiff presents claims of tort and contractual liability or multiple theories of liability under a single claim. In *Skender*, a constructional defect case, this court concluded that the use of special verdicts was necessary because the plaintiff asserted multiple theories of liability where comparative negligence was a defense to some but not all of the claims. *Id.* at 1439, 148 P.3d at 717.

Where special verdicts or interrogatories are timely and properly submitted in a case involving multiple claims or multiple theories giving rise to a single claim, the district court should give the special verdicts or interrogatories or explain on the record the reason for refusing them. We are more inclined to reverse a general verdict where, as here, the party complaining of error associated with a claim or theory timely requested special verdicts or interrogatories and the district court denied them without stating its reasoning on the record. This is especially true when the special verdicts or interrogatories would have facilitated our review. As stated in *Gillespie*, "[t]he reality is that the degree of confidence that the jury picked a theory with adequate evidentiary support varies along a spectrum of situations." 386 F.3d at 30. Our holding here will narrow that spectrum.

Applying *Skender* beyond constructional defect cases allows this court to adequately review the jury's decision and determine whether it relied on a viable theory of liability. However, the district court is not required to submit special verdicts or interrogatories to the jury if the party does not timely and properly submit proper proposed special verdicts or interrogatories to the court. NRCP 49. In other words, the district court does not have a sua sponte obligation to submit its own special verdicts or interrogatories or to give improperly framed special verdicts or interrogatories. Given the challenge preparing such interrogatories can pose, the court also has discretion to impose requirements that the parties submit their request no later than calendar call or other pretrial conference close to the date of trial. *See, e.g.*, EDCR 2.69(a)(3) (requiring trial counsel to provide settled and contested jury instructions, including supporting

authority, at the calendar call). Finally, the final settling of jury instructions, special verdicts, and special interrogatories in all criminal and civil jury trials must be done on the record. In the event of an objection by a party, the district court must concisely rule on the objection on the record.[3]

Our holding streamlines the appellate review process and, in doing so, supports *Skender*. If parties submit special verdicts or interrogatories, this court can focus on a legally valid theory and determine if there is substantial evidence supporting that theory. If there is substantial evidence supporting the theory, then this court will uphold the jury's verdict. On the other hand, if the evidence only supports a legally invalid theory, then this court can confidently reverse the jury's verdict. In either case, our holding that parties and district courts submit special verdicts or interrogatories will support this court's precedent, streamline future appellate review, conserve judicial resources, and promote confidence in this court's affirming or reversing a jury's verdict.

Here, Allstate requested special interrogatories, the plaintiff objected to them, and the district court refused to give them without stating on the record its reasons. *See Gillespie*, 386 F.3d at 29-31 (reversing where one of several theories supporting a single claim for relief was invalid); *McCord*, 873 F.2d at 1273-74 (declining to reverse where, although four of eight theories supporting a single claim were invalid, four were valid and the appellant failed to request special interrogatories that would have allowed informed appellate review of the verdict). This was an abuse of discretion requiring reversal and a new trial because two of Miller's three bad-faith theories were invalid and we are unable to determine what theory of bad faith the jury relied upon in this case.[4] Thus, we reverse the district court's denial of Allstate's motion for a new trial.

## CONCLUSION

We conclude that under the facts of this case, Miller's failure-to-inform theory is a viable basis for a bad-faith claim against Allstate. Allstate was required to give Miller's interest equal consideration, which required Allstate to adequately inform Miller of Hopkins' interpleader settlement offer. Whether Allstate adequately

---

[3]In the event that the district court is not reporting or recording a civil jury trial, the district court does not have to make these rulings on the record.

[4]The record discusses certain additional special interrogatories that Allstate filed the Sunday before the final settling of jury instructions. The district court declined to give these interrogatories because it found there was only one claim for relief. Allstate does not cite to this discussion in its opening brief and, likewise, Miller does not cite to it in his answering brief. However, Allstate does cite to this discussion in its reply brief. As a result, it is not clear whether this discussion applies to the special interrogatories at issue.

informed Miller was a question of fact for the jury to decide. As a result, the district court did not err when it submitted the issue to the jury.

We also conclude that neither contractual duties nor the implied covenant of good faith and fair dealing alone required Allstate to file an interpleader complaint or to consent to a stipulated excess judgment. As a result, the district court erred when it submitted these issues to the jury.

Finally, because Allstate did not have a duty to file an interpleader complaint or to consent to Hopkins' stipulated judgment, we are unable to determine what theory of bad faith the jury relied upon. As a result, district courts should follow *Skender*, 122 Nev. at 1435, 148 P.3d at 714, and submit special verdicts or interrogatories in cases when a plaintiff presents claims of tort and contract liability or multiple theories of liability under a single claim and a party timely and properly requests that the district court submit the special verdicts or interrogatories. Further, if there is an objection by a party to jury instructions, special verdicts, or special interrogatories, we are requiring district courts to state on the record their reasons for rejecting or admitting the jury instructions, special verdicts, or special interrogatories. Because the district court in this case did not state on the record its reasoning for rejecting Allstate's submitted special interrogatories, we reverse the district court's denial of Allstate's motion for a new trial.

Accordingly, we affirm in part and reverse in part the district court's judgment and remand this matter for further proceedings consistent with this opinion.[5]

HARDESTY, C.J., PARRAGUIRRE, DOUGLAS, and PICKERING, JJ., concur.

CHERRY, J., concurring in part and dissenting in part:

I agree with the majority that under the facts of this case, Miller's failure-to-inform theory is a viable basis for a bad-faith claim against Allstate. Allstate was required to give Miller's interest equal consideration, which required Allstate to adequately inform Miller of Hopkins' interpleader settlement offer. Whether Allstate adequately informed Miller was a question of fact for the jury to decide. As a

---

[5]Allstate also raises other issues, including whether Miller was required to present an expert witness to meet his burden of proof, whether the district court improperly denied Allstate's motion for continuance, whether the district court improperly excluded Allstate's evidence regarding Hopkins' attorney's motive, and whether the district court abused its discretion by failing to give a curative jury instruction regarding Miller's statements about Allstate's ability to file an interpleader action. We conclude that each of these issues is without merit.

result, I concur with the majority that the district court did not err when it submitted the issue to the jury.

The majority goes on to hold that Miller's two other theories of bad faith, which are Allstate's failure to file an interpleader action and Allstate's failure to consent to an excessive stipulated judgment, are not viable to establish the bad-faith claims against Allstate. Since the majority was unable to determine which of the three theories of bad faith the jury relied upon in this case, the majority felt constrained to reverse the jury verdict in favor of Miller and remand this matter for a new trial.

The majority goes on to hold that the district court erred when it refused to submit Allstate's special verdict questions to the jury. The majority reasons that if the special verdict questions were submitted to the jury, the court would then know which of the theories of bad faith the jury relied upon to find in favor of Miller and against Allstate. Further, to make sure that this court will always be aware of which theory of liability a jury relies upon to find in favor of a plaintiff in a tort case or contract case, the majority now extends *Skender v. Brunsonbuilt Construction & Development Co.*, 122 Nev. 1430, 148 P.3d 710 (2006), which recognized special verdict questions in constructional defect cases that contained both contract and tort theories and a comparative negligence defense, to cases where the plaintiff presents claims of tort and contract liability or where the plaintiff presents multiple theories of liability made under a single claim.

I do not disagree with the majority on its holding that two of the three claims of bad faith are not viable, nor do I disagree on the extension of *Skender* to future cases.

My quarrel with the majority in reversing this matter for a new trial is multifold. First and foremost, the district judge would have had to have been a psychic to know that the court would extend *Skender* to cases other than constructional defect cases. Therefore, the district judge did not abuse her discretion by failing to submit Allstate's special verdict questions to the jury. No one could possibly predict from a fair reading of *Skender* that special verdict questions should be used in tort and contract cases other than constructional defect cases and that failure to give the jury such a special verdict form would result in a reversal of a general jury verdict. As a result, the district court could not foresee that this court would significantly expand *Skender*'s holding. Speaking as a former district court judge, the district courts are required to follow the precedent established by this court. It is unreasonable to expect district courts to predict when and how this court will alter its precedent. As a result, I disagree with the majority's holding that the district court should have submitted Allstate's special verdict questions under *Skender*.

Further, the majority seems somewhat tentative on its pronouncement of extending *Skender*. Although the majority seems to strongly encourage and recommend the use of special verdict questions or interrogatories in cases other than constructional defect cases, the majority cites *Skender* throughout the opinion, giving the impression that *Skender* has in fact been extended to cases other than constructional defect cases.

Also, the majority distorts the discretionary nature of NRCP 49. The majority states that in order to facilitate appellate review "district courts should follow *Skender*" when a plaintiff presents claims of tort and contractual liability or multiple theories of liability under a single claim. The majority goes on to say, "However, the district court is not required to submit special verdicts or interrogatories to the jury if the party does not timely and properly submit proper proposed special verdicts or interrogatories to the court." NRCP 49.

In other words, the majority recognizes the discretionary nature of special verdict questions and interrogatories, but it is still reversing this case because the district court refused to submit Allstate's proposed special interrogatories. The majority's reading of NRCP 49 makes it an abuse of discretion for a district court not to give special interrogatories if requested by one of the parties unless the district court makes findings as to the failure to give said special interrogatories. My reading of NRCP 49 is that said rule is completely discretionary and the majority fails to cite any authority regarding the mandatory nature of findings by the district court.

Is the majority relying on the extended application of *Skender*? However, *Skender* states this "court will sustain a general verdict where several counts are tried if any one count is supported by substantial evidence." 122 Nev. at 1438, 148 P. 3d at 716.

Why strip a plaintiff of a sizable judgment on a general jury verdict when it is clear that said jury verdict could be based on the viable claim of bad faith and said jury verdict is supported by substantial evidence in the record of the trial proceedings? Under *Skender*, this court should affirm a general verdict when there is a viable claim supported by substantial evidence. Here, it is obvious that substantial evidence supported Miller's viable failure-to-inform claim of bad faith against Allstate, which was in fact presented to the jury by Miller. The majority so states that "under the facts of this case, Miller's failure-to-inform theory is a viable basis for a bad-faith claim against Allstate."

I also disagree vehemently with the majority that the district judge abused her discretion because she did not state on the record her reasoning for rejecting Allstate's submitted special interrogatories. What findings could the district judge have made at the trial without doing an injustice to the then present stare decisis? The district judge could have rightly stated that *Skender* applied only to con-

structional defect cases and NRCP 49 was purely discretionary. In light of the jurisprudence that existed at the time of the settling of jury instructions and special interrogatories, it seems inconceivable that the district judge abused her discretion. What she did do is follow the existing caselaw and statutes of the State of Nevada, which leaves only one conclusion. Therefore, the district judge did not abuse her discretion by failing to submit Allstate's special interrogatories to the jury. As a result, the jury verdict against Allstate and in favor of the respondent should be affirmed.

Next, it is obvious that sufficient and substantial evidence of a viable claim of bad faith by Allstate was in fact presented to the jury by Miller. The majority so states that ''under the facts of this case, Miller's failure-to-inform theory is a viable basis for a bad-faith claim against Allstate.''

In *Cortinas v. State*, 124 Nev. 1013, 195 P.3d 315 (2008), this court affirmed a conviction of first-degree murder with use of a deadly weapon and robbery with use of a deadly weapon in spite of the fact that the district court failed to give a requested jury instruction that afterthought robbery may not serve as a predicate felony for felony murder. *Cortinas* discusses the way to determine whether reversal is required when a trial court error allows a jury to return a verdict based on a legally invalid theory but the jury is also presented with one or more valid alternative theories. Since the absolute certainty approach[1] is found to be unsound in a criminal prosecution where the burden of proof is beyond a reasonable doubt, it seems sensible that the absolute certainty approach is unsound in a civil case where the burden on the plaintiff is less stringent.

Finally, the majority relies heavily on a products liability case, *Gillespie v. Sears, Roebuck & Co.*, 386 F.3d 21 (1st Cir. 2004), in order to find an abuse of discretion by the district judge in this bad-faith case against Allstate. The majority was indeed fortunate to find a First Circuit case, not a Ninth Circuit case, to justify the reversal of the jury verdict. A careful examination of *Gillespie* informs the reader that ''[i]n assessing the sufficiency of the evidence, the question for the court is whether, viewing the evidence in the light most favorable to the verdict, a rational jury could find in favor of the party who prevailed.'' *Id.* at 25 (citing *DaSilva v. American Brands, Inc.*, 845 F.2d 356, 359 (1st Cir. 1988)). There is no question that there was sufficient evidence presented at trial to allow a rational jury to find in favor of Miller and against Allstate on the claim of bad faith.

The gravamen of the majority's rationale for reversal of the bad-faith verdict is that the district judge abused her discretion in refus-

---

[1] Under the absolute certainty approach, reversal is mandatory unless the court ''is absolutely certain that the jury relied upon the legally correct theory . . . .'' *Stromberg v. California*, 283 U.S. 359 (1931).

ing without explanation to give the jury the special interrogatories that Allstate proposed. However, even in *Gillespie*, that court does not hold that there is always a reversal if evidence is insufficient with respect to any one of the multiple claims covered by a general verdict. Rather, the *Gillespie* court stated " 'a new trial is *usually* warranted if evidence is insufficient with respect to any one of the multiple claims covered by a general verdict.' " *Gillespie*, 386 F.3d at 29 (emphasis added) (quoting *Kerkhof v. MCI Worldcom, Inc.*, 282 F.3d 44, 52 (1st Cir. 2002)). The *Gillespie* court also confesses that not all circuits follow the practice of the First Circuit in this regard. *Id.* at 30.

Rather than relying on *Gillespie* to reverse the bad-faith verdict against Allstate, I would affirm said verdict on the rationale of other courts, which have upheld a general verdict if there is sufficient evidence to support at least one viable theory. *See Kern v. Levolor Lorentzen, Inc.*, 899 F.2d 772 (9th Cir. 1990); *McCord v. Maguire*, 873 F.2d 1271, *amended by* 885 F.2d 650 (9th Cir. 1989).

The *Gillespie* court also admits that even its

> own approach is by no means rigid. Recognizing that a jury is likely to prefer a better supported theory to one less supported, [the First Circuit has] generously applied the harmless error concept to rescue verdicts where [it] could be *reasonably sure* that the jury in fact relied upon a theory with adequate evidentiary support.

*Gillespie*, 386 F.3d at 30. It was clear in *Gillespie* that "*none* of the theories was strongly supported by the evidence," *id.*, unlike the instant case against Allstate wherein one of the three theories was indeed viable, even according to the majority.

One must ask why would the majority choose the rationale of the First Circuit to reverse rather than the rationale of the Ninth Circuit to affirm this jury verdict? Unfortunately, I have no clue.

For the above reasons, I would affirm the jury verdict against Allstate and in favor of Miller and hold that the district judge did not abuse her discretion in any manner whatsoever. If there is in fact error, I would hold it to be harmless in light of the substantial evidence supporting Miller's failure-to-inform theory of bad faith against Allstate, which was presented to the jury.

SAITTA, J., dissenting:

I disagree with the majority on two points. First, *Skender v. Brunsonbuilt Construction & Development Co.*, 122 Nev. 1430, 148 P.3d 710 (2006), should be mandatory in all civil cases, not just preferred, as the majority suggests. Second, the majority's holding regarding *Skender* should be prospective, not retroactive. There was no indication at the time of trial that this court would extend *Skender* beyond constructional defect cases with comparative negligence de-

fenses. Therefore, I would affirm the jury verdict in this case and hold that the district court did not abuse its discretion by refusing to submit Allstate's special interrogatories.